JAMES D'ARCY, PLAINTIFF IN ERROR, *v.* MORRIS KETCHUM, THOMAS ROGERS, AND EDWARD BEMENT, COPARTNERS, TRADING UNDER THE NAME AND FIRM OF KETCHUM, ROGERS, AND BEMENT.

A statute of the State of New York provides, that, where joint debtors are sued and one is brought into court on process, if judgment shall pass for plaintiff, he shall have judgment and execution not only against the party brought into court, but also against other joint debtors named in the original process, in the same manner as if they had all been taken and brought into court by virtue of such process; but it shall not be lawful to issue or execute any such execution against the body or against the sole property of any person not brought into court.

Where a judgment was given in New York against two partners, one of whom resided in Louisiana and was never served with process, and an action was brought against him in Louisiana upon this judgment, a peremptory exception, in the nature of a demurrer, that "the judgment sued upon is not one upon which suit can be brought against the defendant in this court," was well founded.

Congress did not intend, by the act of 1790, to declare that a judgment rendered in one State against the person of a citizen of another, who had not been served with process or voluntarily made defence, should have such faith and credit in every other State as it had in the courts of the State in which it was rendered.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

Mr. Justice McKinley did not sit on the trial of this cause in the Circuit Court.

In February, 1849, there were two commercial houses, one trading under the name of A. H. Gossip & Co. in New York, and the other under the name of Gossip & Co. in New Orleans. The firm of A. H. Gossip & Co. consisted of Aurungzebe H. Gossip and Joseph Calder, and the firm in New Orleans consisted of George H. Gossip and James D'Arcy.

On the 4th of February, 1849, the New York house drew the following bill of exchange upon the New Orleans house, viz.: —

" $1,461\frac{87}{100}$. *New York, 4th February,* 1839.

"Four months after date, pay to our own order fourteen hundred and sixty-one $\frac{87}{100}$ dollars, value received, and charge the same to account of

(Signed,)  A. H. GOSSIP & Co.
157 *Water St., New York.*"

" To Messrs. GOSSIP & Co.,
St. Charles St., New Orleans.  (Accepted.)

" Accepted:

" GOSSIP & Co."

Indorsed:

" A. H. GOSSIP & Co.
J. STEWART, 5 *Platt St.*"

This bill appeared to have passed into the hands of Ketchum, Rogers, and Bement, and not to have been paid at maturity.

In February, 1840, Ketchum, Rogers, and Bement brought an action in the Superior Court of the City of New York against the drawers and acceptors of the bill, viz. Aurungzebe H. Gossip, Joseph Calder, George H. Gossip, and James D'Arcy. The suit was brought against them jointly, and the declaration contained the money counts, together with a notice that the bill of exchange would be given in evidence under these counts.

The record did not show that any process was served upon either of the four defendants. George H. Gossip, a partner in the New Orleans house, voluntarily appeared. The record contained a suggestion that neither the declaration nor any notice of the rule to plead thereto had been served on the defendants Aurungzebe H. Gossip, Joseph Calder, or James D'Arcy. George H. Gossip pleaded the general issue, and gave notice of a set-off.

In December, 1846, the cause was called for trial, but George H. Gossip made default. A jury was impanelled to assess the damages, who gave the following verdict, viz.: —

" That the said George H. Gossip did undertake and promise in manner and form as the said plaintiffs have above thereof complained against him, and they assess the damages of the said plaintiffs, by reason of the non-performance of the said several promises in the said declaration contained, to the sum of $ 1,418.81, besides their costs and charges by them about their suit in that behalf expended, and for those costs and charges to six cents.

"Therefore it is considered that the said plaintiffs do recover, against the said George H. Gossip and James D'Arcy, their damages aforesaid, by the jury aforesaid, in form aforesaid, and also the sum of $ 52.06, for their said costs and charges by the said court now here adjudged of increase to the said plaintiffs, and with their assent; which said damages, costs, and charges in the whole amount to $ 1,470.93; and the said defendants in mercy, &c.

"Judgment signed this 25th day of January, 1847.

" THOMAS J. OAKLEY."

The above judgment was rendered against D'Arcy as well as George H. Gossip, under a statute of the State of New York, which provides that, " where joint debtors are sued and one is brought into court on process, he shall answer the plaintiff; and if judgment shall pass for plaintiff, he shall have judgment and execution, not only against the party brought into court, but also against other joint debtors named in the original

process, in the same manner as if they had all been taken and brought into court by virtue of such process; but it shall not be lawful to issue or execute any such execution against the body or against the sole property of any person not brought into court."

Under this judgment against D'Arcy, Ketchum, Rogers, and Bement brought a suit in the Circuit Court of the United States for the District of Louisiana, of the following description. The suit being by petition, the whole of it will be inserted.

" The petition of Morris Ketchum, Thomas Rogers, and Edward Bement, copartners, doing business under the firm of Ketchum, Rogers, and Bement, humbly shows, that petitioners are citizens of the State of New York, and that James D'Arcy, who is a citizen of the State of Louisiana, is indebted unto petitioners in the sum of $1,418.81, with interest and costs, for this:

" That heretofore, to wit, on or about December, 1846, George H. Gossip and James D'Arcy, being jointly and severally indebted to petitioners in the aforesaid sum, petitioners recovered in the Superior Court of the State of New York a final judgment against said George H. Gossip and James D'Arcy for said sum of $1,418.81, with costs; which said judgment was duly and legally obtained, and was and is valid and binding upon said debtors in the State of New York, where the same was rendered as aforesaid. That said Gossip and Company was a commercial firm composed of said G. H. Gossip and said James D'Arcy; and petitioners show, that in virtue of said judgment they are entitled to recover of said D'Arcy the whole sum herein claimed; that he refuses to pay the same, although amicably requested to; all of which more fully appears by reference to the exemplified record of said judgment and proceedings, made part hereof.

" Petitioners therefore pray said James D'Arcy be cited, and that after due proceedings he be condemned to pay petitioners $1,418.81; $52.12 costs, interest at the rate of seven per centum per annum, the legal interest of the State of New York, from February 1, 1840, till paid, and for general relief.

" And as in duty," &c.

To this petition there was attached an exemplification of the record, with some few irregularities which it is not worth while to specify.

D'Arcy appeared and filed the following exceptions and answer: —

" The defendant in the above suit, a citizen of the State of Louisiana, residing in New Orleans, now comes and excepts

to plaintiffs' petition filed in said suit, that the same is not addressed to any court of the United States of America, and is therefore informal and should be dismissed.

" 2d. The defendant excepts, that the judgment sued upon is not one upon which suit can be brought against the defendant in this court.

" 3d. The defendant excepts to said judgment, that it does not follow the verdict; that the same is not signed, and is not final; and that the same, with the record of proceedings in the suit in which the same was rendered, is not properly certified, as required by law; and the said record is upon its face incomplete.

" 4th. The defendant pleads prescription.

" If the above exceptions and plea are overruled, the defendant for answer says, that he does not owe the plaintiffs in manner and form as set forth by them; that he is in no way indebted to them; and prays that he may have judgment thereof in his favor, and that said plaintiffs be condemned to pay all costs."

In May, 1848, these exceptions were argued, and the Circuit Court (Mr. Justice McKinley being absent) overruled the exceptions and gave the following judgment: —

" This cause having been argued, and submitted to the court on the 8th instant, and the court having maturely considered the same under the law and the evidence, it is ordered, adjudged, and decreed, that there be final judgment rendered herein in favor of the plaintiffs, Ketchum, Rogers, and Bement, and against the defendant, James D'Arcy, for the sum of $1,418.81, with interest thereon at the rate of seven per centum per annum, from the 1st day of February, 1840, till paid, $52.12 costs of suit in New York, and the costs of this suit to be taxed.

" Judgment rendered May 17, 1848.

" Signed June 17, 1848.

" THEO. H. McCALEB, [SEAL.]
*U. S. Judge.*"

A motion was made for a new trial, but it was overruled.

D'Arcy then sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Coxe,* for the plaintiff in error, and *Mr. Ketchum,* for the defendants in error.

*Mr. Coxe,* for the plaintiff in error, made the following points.

The distinction frequently expressed by this court between judgments that are erroneous and subject to reversal on error,

and those which are essentially defective and void, will not be impugned or controverted; but it is submitted that the New York judgment in this case, and which constitutes the sole foundation of the present suit, is so essentially defective, that it cannot give support to this judgment.

1. It is not sufficiently authenticated as the law requires, to entitle it to admission in evidence.

The foundation of the existing law on this subject will be found in the Constitution, Art. IV. § 1, which provides that " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

Congress, by the act of May 26, 1790 (1 Statutes at Large, 192, c. 11), did prescribe this mode of authentication, and declare that the records and judicial proceedings of the courts of any State shall be proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with a certificate of the judge, &c., that the said attestation is in due form. In this case there is no seal of court attached.

In the United States *v.* Auredy, 11 Wheat. 407, this court held that no other or further formality is required than the annexation of the seal; the act of Congress requires no other authentication. That was the case of a legislative proceeding.

In Craig *v.* Brown, 1 Pet. C. C. 352, where the question arose as to the authentication of a judicial proceeding, it was held that, whenever the court whose record is certified has no seal, this fact should appear in the certificate of the clerk or in that of the judge, and where there is a seal, that should be appended. The record in this case shows that the court has a seal, yet none appears on the paper. This, the proper and only legal authentication of a judicial record, is omitted.

2. The judgment does not appear to have been signed by a judge of the Superior Court. In his attestation the chief justice calls himself by his appropriate title, but the judgment itself is signed Thomas J. Oakley, without any designation of office.

3. From the record it is apparent, not only that D'Arcy never was served with process, or in any manner notified of the proceeding, but it fully appears that there was no attempt to serve him with process, for none was ever issued; none to serve him with a copy of the declaration, for the reason assigned, his absence from the jurisdiction of the court; no proceeding against him by public notification or otherwise, to inform him

of the pendency of the suit; no averment of any default warranting a judgment in his absence.

In Mayhew v. Thatcher, 6 Wheat. 129, this court held that the record of a judgment in a State court is conclusive, although it appears the suit was commenced by attachment, when the defendant appeared and made defence.

In Hollingsworth v. Barbour, 4 Peters, 466, this court cited 5 Johns. 37, 41; 3 Wils. 297; 9 East, 192; 8 Johns. 86, 90; and affirmed the law as declared by Judge Trimble on the circuit, that, " by the general law of the land, no court is authorized to render a judgment or decree against any one, or his estate, until after due notice by service of process to appear and defend. This principle is dictated by natural justice, and is only to be departed from in cases expressly warranted by law and excepted out of the general rule."    See also p. 475.

The objections here urged were distinctly presented to the Circuit Court and overruled.

The proceedings in the Circuit Court are scarcely less irregular and extraordinary.

1. The petition is addressed to the court by a name unknown to the law.

2. The suit is instituted against D'Arcy alone, upon a joint judgment against two, without assigning any reason for omitting the only party who had appeared in the New York court, and who alone appears to be party to the proceedings and verdict in that court.

3. In setting out that judgment, the petitioners have miscalled the court in which it is said to have been rendered.    It is called the Superior Court of the State of New York.    In declarations it is essential that the plaintiff should set out the ground of his action with the most rigid particularity.    In suits upon judgments this is especially required.    Any variance is fatal.    In Coy v. Hymas, 2 Str. 1171, plaintiff declared upon a judgment for £ 388 0s. 1d. as a judgment for £ 388, and the variance was held fatal.    In Pope v. Foster, 4 T. R. 590, which was an action for a malicious prosecution, it was held that an averment in the declaration of the day of trial must exactly agree with the record to be produced to support it. On account of a variance as to the day, Lord Kenyon nonsuited plaintiff, and the court refused a rule to set aside the nonsuit.    In Green v. Bennett, 1 T. R. 656, an action against defendant for negligence as attorney, the return of the writ as laid in the declaration varied from that in the record, and it was held fatal.    In Purcell v. Macnamara, 9 East, 160, the case of Pope v. Foster was overruled, on the single ground that the day constituted no part of the description of the judg-

ment; had it been so laid; the variance would have been fatal. The case of Green v. Bennett is, however, approved.

4. The judgment in the Circuit Court does not correspond with the New York judgment, on which suit is brought. The petition prays that defendant be condemned to pay $ 1,418.81, $ 52.12 costs, with interest at the rate of seven per cent., the legal interest of New York, from February 1, 1840, till paid. · The New York judgment is for $ 1,470.93, including costs, without any express allowance of interest, and consequently not bearing interest anterior to the date of the judgment, viz. 25th January, 1847. The judgment of the Circuit Court is for $ 1,418.81, with interest at seven per cent. from the 1st of February, 1840, beside the costs of both suits, thus allowing interest, according to the New York rate, for about seven years before any was due under the New York judgment.

Even if interest could be allowed from a date anterior to the judgment, which, under the verdict in New York, clearly could not be done, yet if that suit was in fact brought on the bill of exchange, as it purports to be, that, being payable in New Orleans, could only bear Louisiana interest, and that from the date of the judgment, which must be presumed to have comprehended all the interest then due.

In violation of these principles the judgment of the Circuit Court was rendered, and on these grounds should be reversed.

5. Again, the petition sets forth. that the petitioners, on or about December, 1846, recovered this judgment; whereas, the proof is that the judgment was signed in January, 1847; and even the hour and minute are set forth, 10.25 A. M.

*Mr. Ketchum,* for the defendants in error, made the following points.

I. The judgment in the Superior Court was properly entered against James D'Arcy, according to the law of the State of New York, and that judgment merged the demand on the promissory note, to recover which the suit below was brought. Carman v. Townsend, 6 Wend. 206; Opinion of Chancellor, Ibid. 209; Oakley v. Aspinwall, 2 Sandford's Superior Court Rep. 8.

II. The petition not only sets forth the judgment, but avers that the same " was and is valid and binding upon said debtors in the State of New York, where the same was rendered as aforesaid," and also, " that said Gossip and Company was a commercial firm, composed of said G. H. Gossip and said James D'Arcy." Defendant below takes three exceptions to the petition. He does not deny in these exceptions " that the

judgment was valid and binding upon said debtors in the State of New York," nor does he deny " that said Gossip and Company was a commercial firm," &c.   Not having denied these allegations, they are admitted ; the-admissions, therefore, in point of fact, on the exceptions, are : —

1.  That judgment, such as that set forth, was recovered in the Superior Court of the City of New York.

2.  That the judgment was valid and binding upon the debtors in the State of New York.

3.  That Gossip & Co. was a commercial firm, composed of G. H. Gossip and James D'Arcy.

These, as matters of fact, are admitted by the exceptions ; but then it is denied in the exceptions that the judgment is one upon which suit can be brought against the defendant in this court ; it is also alleged that the judgment does not follow the verdict, and that the same is not signed, and is not final, and not properly certified.

III.  The exceptions were rightly decided against defendant by the court below.

IV.  The motion for a new trial on 19th May, 1848, was made upon the ground that the judgment rendered in said suit was contrary to law and evidence, insomuch as by said judgment an effect is given to the record of a judgment rendered and proceedings had in a court of the State of New York, superior to, and wholly different from, the effect which would be given to said judgment and proceedings so rendered and had in one of the courts of the State of New York in any court of the said State of New York.

Had the plaintiff declared on the judgment, substantially, as he has stated his case in the petition, and had the defendant below demurred thereto, on the ground stated in the exceptions, on that demurrer judgment would have been rendered against defendant in the State of New York.   Carman v. Townsend, 6 Wend. 206.

V.  If the cause was heard on the exceptions only, and judgment passed thereon, then a hearing on the plea and answer must have been waived by defendant's counsel.   If the cause was heard on the whole case, and the decision made on the law and evidence, the court must assume that the decision was right, inasmuch as the evidence on which the judgment is founded is not given in the case.

Mr. Justice CATRON delivered the opinion of the court.

This case comes here on writ of error to the Circuit Court for the District of Louisiana; the proceeding below being by petition, according to the practice of that court.

It alleges in substance that about December, 1846, George H. Gossip and James D'Arcy were jointly and severally indebted to Ketchum, Rogers, and Bement, who recovered a judgment against said Gossip and D'Arcy in the Superior Court of the City of New York, for $1,418.81, and costs of suit, with interest on the principal sum after the rate of seven per cent. from February 1st, 1840. "Which judgment," says the petition, "was duly and legally obtained, and was and is valid and binding upon said debtors in the State of New York, where the same was rendered."

Among others, D'Arcy took the following peremptory exception: "The defendant excepts, that the judgment sued upon is not one upon which suit can be brought against the defendant in this court." The exception went to the merits, as it alleged that the action was not well founded, and was properly pleaded, in conformity to the 330th section of the Code of Louisiana Practice, page 128.

In the Circuit Court this exception was overruled, obviously on the assumption that the New York judgment was conclusive, and judgment was rendered against the defendant. And as this was done on an inspection of the record merely as if *nul tiel record* had been pleaded, the question is, whether the proceeding in New York bound D'Arcy.

It appears, among other things, that Gossip and D'Arcy were partners in trade, doing business in the name of Gossip & Co. They were jointly sued with two others. Process was served on Gossip, but none on D'Arcy, who was a citizen of Louisiana, and resided there. Gossip pleaded the general issue and gave notice of set-off, but at the trial permitted judgment to go against him by default, on which a jury assessed damages. On this verdict a judgment was rendered jointly against both Gossip and D'Arcy, by the court in New York.

This proceeding was according to a statute of that State which provides, that, "where joint debtors are sued and one is brought into court on process, he shall answer the plaintiff; and if judgment shall pass for plaintiff, he shall have judgment and execution, not only against the party brought into court, but also against other joint debtors named in the original process, in the same manner as if they had all been taken and brought into court by virtue of such process; but it shall not be lawful to issue or execute any such execution against the body or against the sole property of any person not brought into court."

For a settled construction of this statute in the State of New York, we are referred to the following cases: Dando v. Tremper, 2 Johns. 87; Bank of Columbia v. Newcomb,

15*

6 Johns. 98; Taylor and Twiss *v.* Pettybone, 16 Johns. 66; and Carman *v.* Townsend, 6 Wend. 206.

From these cases it appears that in the New York courts it is held "that such judgment is valid, and binding on an absent defendant as *primâ facie* evidence of a debt, reserving to him the right to enter again into the merits, and show that he ought not to have been charged," should he be sued on the judgment; and furthermore, that the original contract is merged and extinguished by the judgment.

It follows, that, as D'Arcy's defence was in effect a demurrer to the record evidence, it could not have been made in the courts of New York.

And this brings up the question, whether the New York statute, and the judgment founded on it, bound a citizen of Louisiana not served with process; or, in other words, whether the judgment had the same force and effect in Louisiana that it had in New York. It is a question of great stringency. If it be true that this judgment has force and effect beyond the local jurisdiction where it was rendered, joint debtors may be sued in any numbers, and if one is served with process, judgment may be rendered against all; by which means the debt will be established: and as it must happen in numerous instances that one debtor may be found in a State carrying on so great a portion of our commerce as New York does, this mode of proceeding against citizens of other States and persons residing in foreign countries may have operation in all parts of the world, and especially in the United States. If New York may pass such laws, and render such judgments, so may every other State bind joint debtors who reside elsewhere, and who are ignorant of the proceeding. That countries foreign to our own disregard a judgment merely against the person, where he has not been served with process nor had a day in court, is the familiar rule; national comity is never thus extend. The proceeding is deemed an illegitimate assumption of power, and resisted as mere abuse. Nor has any faith and credit, or force and effect, been given to such judgments by any State of this Union, so far as we know; the State courts have uniformly, and in many instances, held them to be void, and resisted their execution by a second judgment thereon; and in so holding they have altogether disregarded, as inapplicable, the Constitution and laws of the United States. We deem it to be free rom controversy that these adjudications are in conformity to the well-established rules of international law, regulating governments foreign to each other; and this raises the question, whether our federal Constitution and the act of Congress founded on it have altered the rule?

The Constitution declares, that " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

By the act of May 26, 1790, Congress prescribes, first, the mode in which the judicial records of one State shall be proved in the tribunals of another; to wit, that they shall be authenticated by a certificate of the clerk under the seal of the court, with a certificate of the presiding judge that the clerk's attestation is in due form. Secondly, " And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have, by law or usage, in the courts of the State from whence the said records are or shall be taken."

These provisions were considered by this court in the case of Mills *v.* Duryee, 7 Cranch, 483, where it was held that the recited sentence of the act of 1790 did declare the effect of a State judgment, by enacting that it should have such faith and credit in every other State as it had in the courts of the State from whence it was taken; and that a judgment, where the defendant had been served with process, concluded such defendant from pleading *nil debet* when sued in another State on the record, and consequently from going behind the judgment and reëxamining the original cause of action; that he was concluded by the record, in like manner as he stood concluded in the State where the judgment was rendered.

This decision was made in 1813, and has since been followed as the binding and proper construction of the act of 1790, in cases where process has been served. But, as was then predicted, (and as has been manifest ever since,) great embarrassment must ensue if the construction, on the facts of that particular case, is applied to all others, without exception.

In construing the act of 1790, the law as it stood when the act was passed must enter into that construction; so that the existing defect in the old law may be seen, and its remedy by the act of Congress comprehended. Now it was most reasonable, on general principles of comity and justice, that, among States and their citizens united as ours are, judgments rendered in one should bind citizens of other States, where defendants had been served with process, or voluntarily made defence.

As these judgments, however, were only *primâ facie* evidence, and subject to be inquired into by plea wh n sued on in another State, Congress saw proper to remedy the evil, and to

provide that such inquiry and double defence should not be allowed. To this extent, it is declared in the case of Mills *v.* Duryee, Congress has gone in altering the old rule. Nothing more was required.

On the other hand, the international law as it existed among the States in 1790 was, that a judgment rendered in one State, assuming to bind the person of a citizen of another, was void within the foreign State, when the defendant had not been served with process or voluntarily made defence, because neither the legislative jurisdiction, nor that of courts of justice, had binding force.

Subject to this established principle, Congress also legislated; and the question is, whether it was intended to overthrow this principle, and to declare a new rule, which would bind the citizens of one State to the laws of another; as must be the case if the laws of New York bind this defendant in Louisiana. There was no evil in this part of the existing law, and no remedy called for, and in our opinion Congress did not intend to overthrow the old rule by the enactment that such faith and credit should be given to records of judgments as they had in the State where made. The language employed is not only fairly open to construction, but the result arrived at by the court below depends on construction; and when we look to the previous law, and the evil intended to be remedied by the framers of the Constitution and by Congress, we cannot bring our minds to doubt, that the act of 1790 does not operate on, or give additional force to, the judgment under consideration; we concur with the various decisions made by State courts, holding that Congress did not intend to embrace judicial records of this description, and are therefore of opinion that the defendant's exception was valid, and that the judgment must be reversed; and so order.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions for further proceedings to be had therein, in conformity to the opinion of this court.