## MOREDOCK v. KIRBY.

(Circuit Court, W. D. Kentucky. October 28, 1902.)

1. CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES OF CITIZENS—STATUTE AUTHORIZING PERSONAL JUDGMENT ON CONSTRUCTIVE SERVICE.

Service of a summons issued against a defendant who is a citizen and resident of another state, made on the agent in charge of his place of business in Kentucky, in accordance with Civ. Code Prac. Ky. § 51, subsec. 6, which provides that "in actions against an individual residing in another state * * * engaged in business in this state the summons may be served on the manager or agent of or person in charge of such business in this state," does not confer jurisdiction to render a personal judgment against the defendant. Such statute, as applied to actions in personam, is invalid, as in violation of section 2, art. 4, Const. U. S., which provides that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states; the right to be exempt from a personal judgment for a money demand without the service of process being one founded on principles of natural justice, and one of the fundamental "privileges and immunities" of every citizen, recognized as such by the laws of Kentucky with respect to its own citizens.

2. SAME—DUE PROCESS OF LAW.

Such invalid is also invalid as in violation of those clauses of the fourteenth amendment which provide that no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, nor deprive any person of property without due process of law.

3. SAME—PROPERTY RIGHTS—WAIVER.

A citizen and resident of one state has the constitutional right to engage in business in another state, and he does not thereby waive the right to object to the constitutionality of a statute of the latter state subjecting nonresidents who engage in business therein to judgments without personal service of process.

On Motion to Quash Return of Service on Summons.

Matt O'Doherty and Forcht & Field, for plaintiff.
R. A. McDowell, for defendant.

EVANS, District Judge. Clara Moredock, a citizen of Kentucky, brought this action in the state court against F. M. Kirby, a citizen

of Pennsylvania, but who at the time was doing business in the city of Louisville under the name of F. M. Kirby & Co. It is an action at law wherein the plaintiff seeks to recover $15,000 damages from the defendant—First, for speaking and publishing of and concerning her certain alleged slanderous and defamatory words; and, second, for an alleged false imprisonment of the plaintiff by the defendant. Upon filing the petition in the clerk's office of the state court, the plaintiff caused a summons to be issued thereon against the defendant, which was placed in the hands of the sheriff of Jefferson county for service. The sheriff made return thereon in the following language:

"Executed July 15, 1902, on F. M. Kirby, doing business under the firm name of F. M. Kirby and Co., by delivering a copy of the within summons to C. P. Dodge, the person in charge of the business of said F. M. Kirby, at No. 504 and 506 Fourth avenue, Louisville, Ky., the said F. M. Kirby being a nonresident of the state of Kentucky, but being engaged in business in the state of Kentucky at Nos. 504 and 506 Fourth avenue, Louisville, Kentucky.

"E. T. Schmitt, S. J. C.
"By H. Woods, D. S."

In due season the defendant, specially entering his appearance for that purpose only, filed his petition for a removal of the action to this court, and upon execution of the proper bond an order of removal was entered accordingly. Upon filing the record in this court the defendant entered a motion to quash the sheriff's return on the summons. By an act of the general assembly of the commonwealth of Kentucky, passed in 1893, section 51 of the Civil Code of Practice was amended, and the amendment is what is now commonly known as subsection 6 of section 51 of the Code. It is in this language:

"In actions against an individual residing in another state, or a partnership, association, or joint stock company, the members of which reside in another state, engaged in business in this state, the summons may be served on the manager, or agent of, or person in charge of such business in this state in the county where the business is carried on, or in the county where the cause of action occurred."

The determination of the motion to quash the return must, therefore, depend upon the validity of a service made pursuant to this legislation of the state of Kentucky and its efficiency under the constitution of the United States to give the court jurisdiction over the person of a citizen of another state upon whom, confessedly, service was not had unless the service indicated by the return must be held constructively to have given the defendant the notice which he was entitled by law to have before a court acquired jurisdiction over his person. Subsection 1, § 2, art. 4, Const. U. S., is in this language:

"The citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states."

The purpose of this most essential provision, and the vital principle upon which it is based, must be obvious. It was matter of the gravest moment, if the people of the United States were to have "a more perfect union," or if "domestic tranquillity" was to be "insured" to them, as suggested in the preamble, that such a provision should be inserted in the organic law; otherwise each state would take care mainly of its own citizens, and by a system of discriminations, which would naturally grow more strict and hostile as time progressed, we should only have

had disunion and contention instead of "union" and "tranquillity." Hence the profound necessity for the provision that the citizens of each state "shall be entitled" to all the "immunities" of the citizens of the several states. This clause was not meant to announce an abstract proposition, but the constitution, with all the force and vigor possible, declares that the citizen of Pennsylvania shall be "entitled" in Kentucky to all the immunities and privileges of the citizens of Kentucky. Moreover, this great provision is mandatory, and must not and cannot be ignored by the courts. It is not claimed that a state court, under the legislative act above copied, could, by the sort of service had in this case, acquire jurisdiction over the persons of citizens of Kentucky unless in the presumably rare instances of their residing elsewhere but continuing to engage in business in Kentucky. Manifestly, under the laws of Kentucky, as the court judicially knows, citizens of that state generally have entire immunity from being subjected to personal judgments for money upon such a service of process in actions at law,—that is to say, citizens of Kentucky generally are exempt from judgments on such service; and, if citizens of Kentucky have such immunity, or are exempt from such consequences, then, in the very language of the constitution of the United States, citizens of Pennsylvania are "entitled" to it also. This is the rule, and citizens of other states could not be deprived of the benefit of its operation, even if the principles of natural justice, to which we shall have occasion to allude, did not intervene. Nor can the rule be changed, and such a result be accomplished, constitutionally, under cover of the very rare exceptions just mentioned of citizens of Kentucky residing out of the state, but continuing to do business here. The constitutional provision deals with the rights of citizens generally, and its operation cannot be contracted by isolated instances.

The supreme court has persistently declined to limit itself to any express definition of the terms "privileges and immunities," as used in the constitution, but has repeatedly held that they were such as are fundamental, and belong to every citizen of all free governments. Slaughterhouse Cases, 16 Wall. 77, 21 L. Ed. 394. It is not doubted that one of them is the right to be exempt from a personal judgment for a money demand without the service of process,—an exemption which the supreme court has said was "founded on principles of natural justice." Pennoyer v. Neff, 95 U. S. 730, 24 L. Ed. 565; Insurance Co. v. French, 18 How. 406, 15 L. Ed. 451. That right is doubtless fundamental, and belongs to every citizen of every free country. Such an exemption is certainly an "immunity" or a "privilege" of the citizens of Kentucky under the laws and judicial proceedings of that state. If a citizen of Kentucky has the "immunity" of being exempt, under such circumstances, from a personal judgment, it constitutionally follows that the citizen of Pennsylvania is equally "entitled" to it. And it may be added that the right to be protected by the constitutional inhibition of any state legislation which shall subject any citizen to the liabilities of a personal judgment without due process of law is the common right of all. Can a citizen of Pennsylvania lose this right in Kentucky by reason of not residing here? We think not. On the contrary, we think it makes no difference where an individual resides or engages

in business. The authorities hold that no court of justice in this country can acquire jurisdiction over him, or a right to render a judgment in personam against him, without a service upon him in person of a summons in the action, unless he enters his voluntary appearance therein. Nothing else is "due process of law." 95 U. S. 714, 24 L. Ed. 565. Such a statute as the one in question cannot abrogate this fundamental rule as against a citizen of another state, though it cannot be doubted that as against the property of the nonresident so engaged in business there may be a judicial proceeding, which will be due process of law for its subjection to the liabilities of the owner. Of course, a state, as to property or a res within its borders, has ample power to provide a course of judicial procedure respecting it and judgments against it. Property not being in any sense a citizen, is not, per se, entitled to any privileges or immunities under the constitution. Hence all the states have attachment laws under which property may be seized and subjected to certain liabilities of the owner, whether he is actually served with process or not. Constructive service is sufficient in such cases.

If, therefore, we went no further, it must be plain upon the face of the Kentucky legislation, when it is tested by the supreme law of the land, that it violates the rights of the defendant as they are guarantied to him by the national constitution by depriving him of an immunity or exemption allowed to citizens of Kentucky. In the case of Carpenter v. Laswell (Ky.) 63 S. W. 609, the court of appeals seems to have assumed that service of a summons upon a citizen of another state, made pursuant to the provisions of the act of 1893, was valid; but, if the question had been raised at the argument of that case, it does not so appear from the opinion of the court, wherein the question of the validity and potentiality of the legislation is neither considered nor decided. But, even if it had been passed upon, this court would not have been bound by the ruling. See the instance of conflict pointed out in Goldey v. Morning News, 156 U. S. 520, 15 Sup. Ct. 559, 39 L. Ed. 517. So far as we can find reported, the precise question involved in this case does not seem to have been decided by any court, though it is quite true that many questions very closely related to it have been adjudicated. A leading case is that of D'Arcy v. Ketchum, 11 How. 165, 13 L. Ed. 648. In that case the attempt was made in Louisiana to uphold a judgment in personam rendered in New York against an absent partner, where, under a New York statute, service had been made upon the partner found in that state, but not upon the absent partner in person. The court held that such a service could not confer jurisdiction over the person of the absent partner, and that the judgment was void, notwithstanding the provision of the constitution requiring that full faith and credit shall be given in each state to the judicial proceedings of every other state. The doctrine of this case was adhered to, and, indeed, emphasized, in Hall v. Lanning, 91 U. S. 161, 23 L. Ed. 271. Grover v. Radcliffe, 137 U. S. 287, 11 Sup. Ct. 92, 34 L. Ed. 670, was a case where Radcliffe, a citizen of Maryland, had executed a bond containing a warrant authorizing any attorney of any court of record in New York, or in any other state, to confess judgment for the penalty therein named, and, under a local statute per-

mitting such a procedure, judgment had been entered against him in Pennsylvania by a prothonotary, without service of summons or an appearance in person or by attorney. In a suit on the judgment in Maryland it was held that it was not valid because there had been no personal service on the defendant nor any appearance entered by him. In Wilson v. Seligman, 144 U. S. 45, 12 Sup. Ct. 541, 36 L. Ed. 338, it was held that a judgment rendered in one state upon a notice or summons served in another state was void, notwithstanding the law of the state where the judgment was rendered authorized such a proceeding. The law of one state having no extraterritorial force could not legalize a service made in another state. In the celebrated case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, there had been a sale of land under an execution issued on a judgment rendered on a service of summons by publication only, according to a statute of Oregon. It was held that the judgment was void, and that the purchaser acquired no title, because there was no personal service of summons on the defendant, and no appearance by him in the action in which the judgment was rendered. In Freeman v. Alderson, 119 U. S. 188, 7 Sup. Ct. 165, 30 L. Ed. 372, the same doctrine was affirmed, and a judgment in personam for the costs of a suit was held to be void where there had been no personal service of process, although there had been an attachment levied upon property. This ruling was held to be in accord also with that in the case of Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931. Another phase of the same general question is dealt with in Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896. In the case of Brooks v. Dun (C. C.) 51 Fed. 138, which arose under a statute of Tennessee quite similar to the Kentucky statute, Judge Hammond, in an elaborate and very instructive opinion, reached the conclusion that the service of the summons in that case was void. He reviewed the authorities with great care, and, while the precise question now involved did not there arise, the two cases are very nearly related.

It thus appears that the statutes of various states which have attempted to deny or abridge the right of the citizen to personal service of summons as a necessary condition precedent to jurisdiction over him in a judicial proceeding have been held to be wholly ineffectual for the purpose. But, though this is true, all the authorities hold that, where the purpose of the action is to seize and attach property merely, no personal judgment being sought, different principles apply. If property is within the "grasp of the court" by having been seized within its jurisdiction by attachment or other proper writ, it will become subject to whatever orders and judgments the court may make respecting it. So a court may obtain jurisdiction in certain cases to establish the status of a citizen of the state in which the court sits. But these matters stand apart, and in no way affect the general doctrine of the courts, and especially of the supreme court of the United States, that the principles of natural justice require that no one shall be subjected to a money judgment in personam unless he has been duly and personally served with notice of the pendency of the action, or unless he voluntarily appears therein. Even corporations, which must necessarily act through agents, and a summons upon which

must be served upon agents, have rights which are guarded by the same general principles. Examples of this are found in the cases of St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, and Goldey v. Morning News, 156 U. S. 519, 15 Sup. Ct. 559, 39 L. Ed. 517. The general rule of law applicable to all personal actions for the recovery of money is very accurately stated in 1 Black, Judgm. § 220, in this language:

"It is an unquestioned principle of natural justice that a man should have notice of any legal proceeding that may be taken against him, and a full and fair opportunity to make his defense. The law never acts by stealth; it condemns no one unheard. It is true that in proceedings in rem the notice may be constructive only, but here the action is directed against the thing itself, and there is no attempt to fasten a personal liability upon the parties concerned. It is true also that constructive service of process is authorized in some other cases, but not for the purpose of a personal judgment. A personal judgment rendered against a defendant without notice to him or an appearance by him is without jurisdiction, and is utterly and entirely void. We think it may be regarded as settled that a judgment of any court, in a suit requiring ordinary adversary proceedings, that appears upon its face or may be shown by evidence (in a case where it may be shown) to have been rendered without jurisdiction having been acquired, by notice, of the person of the defendant, or without jurisdiction of the subject-matter, is void, and may be treated as being so when it comes in question collaterally. Nor is this rule confined to judgments at law. A decree in chancery against a defendant who was never served with process and did not appear is void, and may be set aside, although not appealed from. And, if the court has not acquired jurisdiction of the person of the defendant, as in the case that no sufficient process has been served upon him, no judgment, even of abatement, can be rendered against the plaintiff, for the defendant must become a party before the court before he can have a judgment."

In Goldey v. Morning News, 156 U. S. 519, 15 Sup. Ct. 559, 39 L. Ed. 517, allusion is made by the court to the service of "mesne process" upon the "authorized agent" of a defendant, but mesne process and original process and final process are very different things. Bouvier, in his Law Dictionary, defines the former by saying that "process which is issued in a suit between the original and final process is called 'mesne process.'" The court, of course, used the word advisedly, and had nothing in view except an interlocutory notice, or something of a kindred nature. While constructive or substituted service—one form of which was attempted to be provided for in the amendment made to the Civil Code of Practice by the act of 1893—is adequate in actions in rem or quasi in rem as to the thing seized, it is not so as to any judgment in personam which may be sought. This is the rule clearly and certainly established by the authorities.

The general question involved in the pending motion may, therefore, be stated to be this: Does the character of service indicated by the sheriff's return on the summons confer on the court the lawful power to hear and determine the cause and render judgment against the defendant if he shall fail to defend it; in other words, does that service give the court jurisdiction over the person of the defendant? What has been said resolves the question in the negative, inasmuch as, in the court's opinion, such a service is a nullity.

2. This result may be reached upon other grounds, possibly different, though still closely connected. Not only would the provisions of the fourth article of the constitution be disregarded by holding other-

wise, and not only would the "principles of natural justice" be thereby violated, but the act of 1893 appears clearly to conflict with that clause of the fourteenth amendment to the constitution which says that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States." That amendment also contains this most important clause, "Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." . The supreme court has frequently defined the phrases "the equal protection of the law" and "due process of law" to mean "a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or by his voluntary appearance." Pennoyer v. Neff, 95 U. S. 733, 24 L. Ed. 565, and later cases. Bearing that definition in mind, it may be said that, if the court could not, under the act of 1893, acquire jurisdiction over the person of the defendant by the mode of service attempted to be employed, then to subject him to a personal judgment whereby he would be deprived of his property would manifestly violate his rights under the fourteenth amendment. The state of Kentucky being forbidden by the constitution of the United States to pass any law which would deprive the defendant of his property without due process of law, it is not permissible for the state to enact a statute which enables its courts to render a judgment against him without a personal service of process upon him "within the state," and in this way deprive him of his property. So that, from whatever point of view we look at the question, whether from that of the fourth article of the constitution or from that of the fourteenth amendment, it seems to the court that the legislation referred to cannot be supported. If the legislation fails, all proceedings under it must necessarily fail also. And, as already indicated, this result is emphasized and vindicated to the moral as well as the legal sense by those principles of law which so equitably require that constructive or substituted service, such as here attempted, shall fail in such a case because the principles of natural justice demand personal service of process as an indispensable basis of jurisdiction over a defendant who does not voluntarily enter his appearance.

3. It is also contended that a citizen or resident of another state, who has engaged in business in Kentucky since the passage of the act of 1893, has done so with notice of its provisions, and should be held to have impliedly consented to be subject thereto. His constitutional right to acquire, hold, and enjoy property, or otherwise to engage in business in this state, on an equal footing with any citizen of Kentucky, is unquestionable. It cannot be presumed that such a right would be waived at all, and certainly not where there was no possible necessity nor consideration for doing so. Indeed, his rights in the premises might be regarded as inalienable; but, whether so or

not, anything short of the most express and unequivocal renunciation of them would necessarily be ineffectual. Nothing should be left to implication in such a case. Any implication here would be too shadowy to demand serious consideration.

It follows that the motion to quash the return of the summons must prevail, and an order to that effect will be entered.