CASE 63—ACTION BY THE AMERICAN STEEL HOOP COMPANY AGAINST HARRY GUENTHER TO RECOVER FOR A CARLOAD OF IRON SOLD AND SHIPPED TO DEFENDANT.—OCT. 28.

# Guenther v. American Steel Hoop Co.

APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

PROCESS — NONRESIDENT — SUBSTITUTED SERVICE—CONSTITUTIONALITY OF STATUTE—SUIT FOR PRICE OF GOODS—DENIALS—BREACH OF CONTRACT—ASSUMPTION BY PLAINTIFF—SUBSEQUENT INCORPORATION.

Held: 1. Civil Code, sec. 51, subdivision 6, providing that "in actions against an individual residing in another State, or a partnership, association, or joint stock company, the members of which reside in another State, engaged in business in this State," substituted service may be had, authorizes substituted service on a nonresident individual.

2. As nonresidents are presumed to be without the State, it is not

Guenther v. American Steel Hoop Co.

necessary to show, in order to sustain substituted service on a nonresident as authorized by Civil Code, section 51, subdivision 6, that he was at that time outside the state.

3. Civil Code, section 51, subdivision 6, providing that, in the case of nonresidents doing business within the State, substituted service may be made upon their managers, agents, or persons in charge of such business, is not invalid as providing for insufficient notice.

4. Civil Code, section 51, subdivision 6, authorizing substituted service on nonresidents, does not violate Constitution of the United States, article 4, section 2, providing that citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States.

5. A denial in an answer that defendant is a nonresident on whom substituted service is authorized by Civil Code, section 51, subdivision 6, is immaterial, as answering waives the question of sufficiency of service.

6. In a suit for the price of goods, a denial that defendant is indebted in any sum is a conclusion of law.

7. In a suit for the price of goods, a denial that defendant agreed or promised to pay the money sued for constitutes no defense, where allegations in the petition that the goods were sold and delivered at defendant's special instance and request, and at prices set out in an itemized account filed therewith, are not controverted.

8. In a suit for the price of goods, defendant alleged in his counterclaim for failure to deliver in time that, though the incorporation of plaintiff had been effected subsequently to the breach by his original vendor, yet it had been previously agreed upon by the original vendor and others; that such vendor had closed its plant for the purpose of taking stock, with a view to the consolidation, and that plaintiff had been incorporated for the purpose of taking the contracts, assets, business, good will, and liabilities of the consolidating firms, and did take, pursuant to the agreement, all the contracts of the original vendor, including defendant's, and undertook to carry the same out; that plaintiff took possession and control of the original vendor's plant, and agreed to carry out the contract with defendant; and that plaintiff's incorporation was, in part, to enable it to do so. HELD, Demurrable, as not alleging enough to show that plaintiff had assumed a contractual obligation to defendant, which had ripened into a liability before plaintiff came into existence.

SWEENEY, ELLIS & SWEENEY, ATTORNEYS FOR APPELLANT.

1. Our first contention is that the service of the process in this case on John R. Wright as the manager for the defendant Guenther, and in charge of defendant's business in Owensboro,

was no service at all and did not bring said defendant before the court.

The return on the process is in the following words: "Executed on the within-named defendant, Harry Guenther, by delivering to John R. Wright, manager for said defendant Guenther, and in charge of defendant's business in Owensboro, a true copy of the within summons, November 22, 1900.   J. W. Jones, S. D. C., by Jim Jones, D. S."

Although the defendant may have been a non-resident of the State, yet service upon his agent could in no event have been authorized except it was alleged that he was·at the time of such service *absent from the State.*

2. The court having with much hesitation held the service good, the defendant then filed answer and amended answer alleging a state of facts that the defendant not only had the right to recover damages naturally flowing out of the breach of contract alleged between himself and the plaintiff and J. Rainer Sons' Company, but by which he may recover special damages in the profits which he would have made on the contract between himself and Taylor & Blackford, and also a sum equal to the damages which Taylor & Blackford recovered against the defendant on account of the breach of the contract between them, which breach was the direct result of the breach between the plaintiff and defendant, but the lower court for reasons we can not understand sustained a demurrer to them, or, what was equivalent, pronounced a judgment on the face of the pleading, thereby holding the answers presented no defense whatever.

We insist that the judgment of the lower court is wrong; that the answers, both the original and amended one, present a perfectly good defense, which, if sustained by proof, would, if not altogether, to the extent of the damages shown, defeat the plaintiff's cause of action.

POWERS & ANDERSON, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. Summons may be served on the agent of a nonresident of this State, who is engaged in business in this State, in the county where the business is carried on.   Subsec. 6 of sec. 51, Ky. Civ. Code; Fox. v. Bluegrass Grocery Co., 60 S. W. R., pp. 414, 927.

2. Although appellant was not a nonresident of the State of Kentucky when he filed his answer, this entered his appearance, though he filed his answer under protest.   Tipton v. Wright, 7 Bush, 449; Lillard v. Brannin & Brand, 91 Ky., 516.

3. An answer denying that the goods were sold and delivered

is not sufficient, but the answer must respond as to each and every item in the account. Newman on Pleading, p. 501; Webb v. Jeffries, 2 Bush, 222; Whittaker v. Sandifer, 1 Duv., 262.

4. Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things from such breach of contract itself or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of it. Hadley v. Baxendale, Sedgwick on Damages, vol 1, 8th ed., p. 203; Sedgwick on Damages, vol. 1, 8th ed., pp. 220, 223; Bluegrass Cordage Co. v. Luthy & Co., 98 Ky., 583.

5. Obvious and absolute physical impossibility apparent upon the face of the promise and thus known to the parties renders the promise void. Beach on the Modern Law of Contracts, vol. 1, sec. 222; Leak on Contracts, p. 686. In this connection, also see Statute of Frauds, subsec. 4; sec. 470, Ky. Stats.; Chesapeake, Ohio & Southwestern R. R. Co. v. Griest, 85 Ky., 619.

6. If the pleader does not allege that the promise was in writing it will be presumed that it was in parol. 4 Met., 371; 14 Bush, 776; 15 B. M., 443; 3 Met., 463.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellee, the American Steel Hoop Company, filed this action against Harry Guenther, doing business in the firm name of Harry Guenther & Bro., to recover $647.43 for a carload of round bar iron sold and delivered by the plaintiff. It was alleged in the petition that the defendant is a non-resident of the State, and that John S. Wright is the agent and manager of his business in the State of Kentucky. A summons was issued on the petition, which was returned by the sheriff as follows: "Executed on the within-named defendant, Harry Guenther, by delivering to John S. Wright, manager for said defendant, Harry Guenther, and in charge of said defendant's business in Owensboro, Ky., a true copy of the within summons." Thereafter this order was entered:

"Defendant moves that the court quash the return of summons, to which plaintiff objects. Having considered said motion, the same is overruled, to which defendant excepts." The propriety of this order is the first question to be determined on the appeal. Subsection 6 of section 51 of the Civil Code is in these words: "In actions against an individual residing in another State, or a partnership, association, or joint stock company, the members of which reside in another State, engaged in business in this State, the summons may be served on the manager, or agent of, or person in charge of, such business in this State, in the county where the business is carried on, or in the county where the cause of action occurred." It is insisted that the statute was intended to apply to non-resident firms, associations, or joint stock companies engaged in business in this State, when all of the members reside in another State, and no more. But the first words of the section are, "In actions against an individual residing in another State." Where the business is done in this State by persons not residing here, but engaging in business here, the mischief intended to be remedied by the statute does not depend upon the number of persons running the business. The purpose of the statute is to afford some means of serving process upon this class of persons who engage in business in this State, carrying it on through agents having charge of the business, and not directing it in person. Both the language of the statute and its evident purpose cover this case, as the defendant carries on a manufacturer's business in Owensboro.

It is also objected that it was not shown that the defendant was absent from the State when the process was served on his agent, and, as it has been the policy of the State to require personal service, this must be shown. But the statute does not so provide. It is not presumed that a non-resident of

the State is in the State. If the defendant desired to raise this question, he should have shown the fact. This he did not do.

It is also insisted that the statute is invalid, and in support of this position we are referred to Moredock v. Kirby (C. C.) 118 Fed., 180; Pennoyer v. Neff, 95 U. S., 714, 24 L. Ed., 565; and Grover, etc., Co. v. Radcliffe, 137 U. S., 287, 11 Sup. Ct., 92, 34 L. Ed., 670. In Carpenter v. Laswell, 23 R., 686, 63 S. W., 609, and Nelson Morris & Co. v. Rehkopf & Sons, 25 R., 352, 75 S. W., 203, it was stated by this court that the statute referred to is valid, but it is urged that the question was not before the court in either of those cases; and, as the subject is important and not without difficulty, we will consider the question as a new one. In Pennoyer v. Neff an action was brought in the United States Circuit Court for the District of Oregon to recover a tract of land. The defendant claimed title to· the land under a sheriff's sale made under a personal judgment in the State court against the plaintiff, who was a non-resident of the State of Oregon, upon constructive service by virtue of a ·statute of the State. The Supreme Court held the title bad, but, in concluding its opinion, after stating, to prevent misapplication of its reasoning, that certain things were not meant, the court added this: "Neither do we mean to assert that a State may not require a non-resident entering into partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice of legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure to make such appointment or to designate such place, that service may be made upon a public officer designated

for that purpose, or in some other prescribed way, and that judgments rendered upon such service may. not be binding upon the non-residents both within and without the State. As was said by the Court of Excheqcer in Vallee v. Dumergue, 4 Exch., 290: 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.'" In Grover, etc., Co. v. Radcliffe, 137 U. S., 287, 11 Sup. Ct., 92, 34 L. Ed., 670, a judgment had been entered in Pennsylvania, without process of any kind, on a bond for the payment of money. which stipulated that, if the bond was not paid, judgment by confession might be entered in any court, without notice, and there was a Pennsylvania statute authorizing the proceedings. Suit was brought in Maryland to enforce the judgment. The Supreme Court of Maryland declined to enforce it against a citizen of that State, and the Supreme Court of the United States affirmed its judgment. After showing that the judgment was not valid under the laws of Maryland, the Supreme Court said: "And the distinction between the validity of a judgment rendered in one State, under its local laws upon the subject, and its validity in another State, is recognized by the highest tribunals of each of these States." Further on, in answer to the objection that the defendant must be presumed to have contracted in view of the laws of Pennsylvania, the court said: "But we do not think that the citizen of another State than Pennsylvania can be thus presumptively held to knowledge and acceptance of statutes of the latter State. What Benge authorized was a confession of judgment by any attorney of any court of record in the State of New York or any other State, and he had a right to insist upon the letter of the

authority conferred. By its terms, he did not consent to be bound by the local law of every State in the Union relating to the rendition of judgment against their own citizens without service or appearance, but on the contrary made such an appearance a condition of judgment. And even if judgment could have been entered against him, not being served and not appearing, in each of the States of the Union, in accordance with the laws therein existing upon the subject, he could not be held liable upon such judgment in any other State than that in which it was so rendered, contrary to the laws and policy of such State. The courts of Maryland were not bound to hold this judgment as obligatory either on the ground of comity or of duty, thereby permitting the law of another State to override their own." Neither of these cases seem to have any application to the question presented. The judgment complained of was not rendered on constructive service of process, nor is the question now raised as to what effect should be given the judgment beyond the confines of this State, where the statute authorizing the mode of service which was followed is without force. As the defendant was running his foundry in this State when the process was served, and as the process was served on his manager in charge of the business, and the iron was bought for the business, the case seems to fall within the qualification made by the court of the rule laid down in Pennoyer v. Neff.

There is a vital distinction between constructive service of process, under section 57 of the Civil Code, and substituted service of process, under sections 51-54. By subsection 4 of section 51, the process may be served upon a common carrier in any county by delivering a copy to its chief officer or agent; and this section was upheld, although the defendant was not incorporated. Adams Express Co. v. Crenshaw, 78

Ky., 136. By subsection 3 a similar mode of serving pro-
cess is allowed where the defendant operates a railroad, and
by subsection 5 service of process against the owner is author-
ized to be had by delivering a copy to the agent of the per-
son operating the railroad, where a lease has been made.
This provision was held valid in Maysville, etc., R. R. Co.
v. Ball, 108 Ky., 241, 21 R., 1693, 56 S. W., 188. By section
52, if the defendant is under fourteen years of age, the sum-
mons must be served on his father, or, if he have no father,
on his guardian, or, if he have no guardian, on his mother,
or if he have no mother, on the person having charge of him.
By section 53, similar provision is made for the service of
process on persons of unsound mind. By section 54, if the
defendant is a prisoner in the penitentiary a copy of the
petition must accompany the summons, and the service must
be on the keeper of the penitentiary, who shall deliver the
copy of the petition and summons to the prisoner. By sec-
tion 55, if the defendant be a community of Shakers, holding
property in common, the service must be made by posting
a copy of the summons at the door of its meeting house, and
by delivering a copy to some member of the community. Sim-
ilar provisions to these have been in force in this State from
the earliest times, and in other States of the Union. In
many of the States it is provided by statute that a copy
may be left at the defendant's place of abode where it is
impossible to obtain personal service. In New York, when
substituted service is necessary, an order of the court is re-
quired, and the order can not be attacked collaterally. In
the federal courts, without the aid of any statute, substituted
service is allowed in an ancillary proceeding to bring in par-
ties to the principal suit. See 19 Ency. of Pleading and
Practice, pp. 620, 621. The general rule is that substituted
service of process is equivalent to personal service, and war-

rants a personal judgment, if made in the manner pointed out by the statute, on the ground that the defendant is presumed to have received the notice. Sturgis v. Fay, 16 Ind., 429, 79 Am. Dec.; 440; Rauber v. Whitney, 125 Ind., 216, 25 N. E., 186; People v. House, 4 Utah, 382, 10 Pac., 843; Conwell v. Atwood, 2 Ind., 289; Burbage v. American National Bank, 95 Ga., 503, 20 S. E., 240. Where a non-resident obtained a common law judgment, and a suit was brought in equity to enjoin it, it was held that process might be served on his attorney without the aid of the statute. Chalmers v. Hack, 19 Me., 124. The same rule is followed in the federal courts in actions for a new trial. Oglesby v. Attrill (C. C.) 14 Fed., 214, 4 Woods, 114, and cases cited. It is thus apparent that there have always been well-recognized exceptions to the general rule requiring personal service of the process on the defendant, and the competency of the Legislature to provide for a substituted service, when necessary, has been generally recognized by the courts. In Biesenthall v. Williams, 62 Ky., 331, 85 Am. Dec., 629, a suit was brought in this State to enforce a judgment rendered in Ohio on a service of process by leaving a copy at the defendant's residence, the defendant being then a citizen of Ohio. The court held the judgment valid, and enforced it, saying that this mode of service was, under the statute, an actual service of process, and that the laws of Ohio were binding upon the citizens of that State, although they could not operate extraterritorially. The non-resident of this State who comes into it and does business here does so subject to its laws, and when he carries on this business by a substitute the State may properly provide that the service of process on the substitute shall be legal. No sound distinction can be drawn between such a provision of the statute and that authorizing process against an infant under

fourteen years of age or a lunatic to be served on the person having charge of him, or against the persons operating a railroad on the agent in the county where the transaction occurs. If notice of the action does not in fact reach the defendant, ample remedy is also provided by the Code for the granting of new trials, where, from unavoidable casualty or misfortune, the party is prevented from appearing or defending. Code, section 518; McCall v. Hitchcock, 9 Bush, 66. In the case before us the defendant in fact received notice of the action, for he appeared and moved to quash the process. In the case of Moredock v. Kirby (C. C.) 118 Fed., 180, process served under the statute in question was quashed by the Circuit Court of the United States for the District of Kentucky upon the authority of Pennoyer v. Neff, and because it deprived citizens of other States of the rights and privileges of citizens of this State. We can not see that section 2 of article 4 of the Constitution of the United States has any application. As shown, the statutes of the State allow substituted service of process on other classes of persons than non-residents of the State. The rights and privileges guarantied to the citizens of the States by the Federal Constitution are their fundamental rights as citizens. What rights the guaranty includes the Supreme Court has declined to define, but legal remedies may be allowed against those who are domiciled without the State which are not allowed against those who are domiciled within it. Thus, in Cooley on Constitutional Limitations (6th Ed.) 490, after pointing out certain rights that are included, it is said: "But it is unquestionable that many other rights and privileges may be made—as they usually are—to depend upon the actual residence; such as the right to vote, to have the benefit of exemption laws, to take fish in the waters of the State, and the like. And the constitutional provisions are not violated by

a statute which allows process by attachment against a debtor not a resident of the State, notwithstanding such process is not admissible against a resident." So it is held that a statute requiring security for cost from non-resident plaintiffs suing in the State is valid. Id., p. 25, note; 19 Ency. of Pleading and Practice, 344, and cases cited. Under these principles the Legislature of any State may classify litigants according to the impracticability of obtaining personal service of process, and authorize substituted service when necessary to the administration of justice. This right of the States seems to be expressly recognized by the Supreme Court in Pennoyer v. Neff. We therefore conclude that the statute is not invalid, and that the motion to quash the process was properly overruled.

The defendant, in his answer, put in issue the allegation of the petition that he was a non-resident of the State. This was immaterial, for, having gone into the merits of the case, as he did by his answer, he had entered his appearance to the action. In the first paragraph of the answer the defendant undertook to put in issue the allegations of the petition as to the purchase of the iron sued for; but the denials of this paragraph were insufficient, and the court properly sustained a demurrer thereto. The denial that the defendant was indebted in any sum was only a statement of a conclusion of law. The denial that the defendant agreed or promised to pay the plaintiff the money sued for was insufficient to constitute a defense, the allegations of the petition that the iron was sold and delivered at the defendant's special instance and request and at the prices set out in the itemized account filed being undenied. In the other paragraph of the answer the defendant alleged that on the —— day of March, 1899, he contracted with the firm of Taylor & Blackwell, at Lewisport, Ky., to manufacture for them 1,000 plow fenders, to be

delivered not later than April 15, 1899, and in order to en-
able him to comply with his contract he wrote to J. Painter
& Sons' Company on March 6, 1899, at Pittsburg, Pa., offer-
ing to purchase the necessary material for the fenders, noti-
fying them within what time he must have it in order to com-
ply with his contract; that they answered on March 8, 1899,
and agreed to furnish him with the material within ten days
or two weeks, and, relying on this, he closed his contract
with Taylor & Blackwell; that about this time J. Painter &
Sons' Company took stock in appellant, and appellant under-
took to carry out the contract of J. Painter & Sons' Com-
pany, but failed to do so, and thereby he was disabled from
carrying out his contract, and sustained damages in the sum
of $1,000, which he plead as a counter-claim and set-off.
The plaintiff, by its reply, put in issue the allegations of the
answer, and then pleaded that it was incorporated on April
14, 1899, and had no existence before that date, and that
the time within which the iron was to be furnished, under
the allegations of the answer, had expired before it came
into existence. A copy of the article of incorporation was
filed with the reply, sustaining its allegation as to the time
when the plaintiff was incorporated. To this reply the de-
fendants filed the following rejoinder: "Defendants state
that, while it may be true that plaintiff was incorporated
on the 14th day of April, 1899, they charge and allege the
fact to be true that the said J. Painter & Sons' Company
had previous to that time, with others, gone into and had
agreed upon the terms upon which they would form a corpora-
tion known as the American Steel Hoop Company, and that
the foundry, mills and plant, factories of J. Painter & Sons'
Company had shut down for the purpose of taking stock
with a view to delivering the same to said company, the plain-
tiff herein; and that the said company, the American Steel

Hoop Company, had been formed for the purpose, among other things, of taking the contracts, the assets and business, good will and liabilities of corporations, associations, and firms and individuals, and did take, pursuant to the agreement they had, all the contracts of J. Painter & Sons' Company, including the one pleaded by defendant in its answer, and undertook to carry the same out, knowing at the time and having in its possession and under its control all correspondence between defendant and J. Painter & Sons' Company. They further state that while the said J. Painter & Sons' Company agreed and contracted to furnish the material to defendant within ten days or two weeks after the 12th day of March, 1899, they state that after plaintiff had taken possession and control of the said J. Painter & Sons' Company, it undertook and agreed to carry out said contract, and its incorporation was in part to enable it to carry out the contracts of the said J. Painter & Sons' Company with other contracts it had agreed and assumed to do at the time of the formation of the corporation, and in pursuance of a plan that had been promulgated prior thereto." The court sustained a demurrer to the rejoinder, and entered judgment for the plaintiff. The defendant failed to plead further. By the terms of the defendant's contract he was to deliver the fenders on April 15th. The plaintiff did not come into existence at Pittsburg until April 14th. The material ordered of J. Painter & Sons' Company was a lot of steel, costing something over $50, which was ordered to be shipped from Pittsburg to Owensboro by water. It was manifestly too late for appellee to comply with the contract of J. Painter & Sons' Company. That company became liable, under the pleading, when it failed to deliver the goods within two weeks of March 12th. The liability of J. Painter & Sons' Company for the

contract which it had broken became absolute before appellee was incorporated. The rejoinder is not sufficient in its averments to show that appellee assumed all the liabilities of J. Painter & Sons' Company, or that it assumed its liability to appellant. Its undertaking to carry out contracts which were subsisting was a very different thing from its undertaking to assume the liabilities of J. Painter & Sons' Company for past transactions. There is not enough in the rejoinder to show that appellee is answerable to appellant for the shortcoming of J. Painter & Sons' Company, which had ripened into an absolute liability before appellee came into existence.

Judgment affirmed.

Chief Justice Burnam dissenting on the question of the validity of the service of process.