## Johnson, et al v. Westerfield's Admr.

(Decided March 18, 1911.)

### Appeal from Ohio Circuit Court.

1. Substituted Service of Summons.—Substituted service of summons upon the owner of a steamboat, who resides in Indiana and runs a boat between Evansville, Indiana, and Bowling Green, Kentucky, may be made, under subsection 6, of section 51 of the Civil Code, by delivering a copy of the summons to the master of the boat—he being the person in charge of the non-resident's business in Kentucky, where the cause of action occurred.

2. Collision Upon Rivers—Jurisdiction.—The clause of the Federal judiciary act of 1789, saving to suitors in civil cases of admiralty and maritime jurisdiction, a common law remedy where the common law is competent to give it, leaves with the courts of Kentucky the jurisdiction to try cases for the negligent or wrongful killing of a person by a collision of boats, said action being authorized by section 241 of the State Constitution.

3. Petition—Contributory Negligence.—In a suit by a person who was killed by the negligent or wrongful act of another, the plaintiff need not prove that the deceased was exercising ordinary care for his own safety at the time of his death.

4. Peremptory Instructions.—Where a steamboat ran upon a raft which did not have the prescribed lights to give warning of its presence, and the boat first unsuccessfully attempted to back off from the raft, and then attempted to force itself off by a forward movement of the boat, and the plaintiff's intestate, who was asleep upon the raft, was drowned either in the first collision or in the second forward movement of the boat, the court properly overruled defendants' motion for a peremptory instruction.

5. Instructions.—Instructions which failed to present to the jury the reciprocal duties of the parties plaintiff and defendant, and were so general and abstract as to make the jury the judges of both the law and the facts, present a reversible error.

6.    Evidence—Rules of Navigation.—The rules issued by the Secretary of War for regulating the navigation of rivers are promulgated under the authority of the Federal government to regulate commerce among the several States; constitute a part of the law of the river, and are admissible in evidence.

H. P. TAYLOR, H. J. PECKENPAUGH and JOEL E. WILLIAMSON for appellants.

HEAVRIN & WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant, P. H. Johnson, was the owner and T. K. Bowles the pilot and master, of the steam tug boat "Samuel," which plied Green River and Ohio River between Bowling Green, Kentucky, and Evansville, Indiana. While ascending Green River on the night of January 4, 1909, a short time before midnight, the "Samuel" collided with a raft tied to the eastern bank of Green River near Woods' Landing, and drowned Frederick Westerfield and three other men, who were asleep upon the raft.

The Samuel was towing three empty barges, abreast of each other, having a combined total width of 76 feet. The raft upon which Westerfield was sleeping was what is known as a four-tier raft, 64 feet wide and 300 feet long. Westerfield and seven other men were sleeping in a smoke-colored tent eight or nine feet high, which was located about 50 feet from the lower end of the raft. On the other side of the river, and opposite this large raft, there was tied to the bank a two-tier raft. Green River at this point was about 300 feet wide. The lower end or head of the larger raft swung out into the river some 20 feet from the river bank, thus throwing the farther or river side of the raft about 84 feet from the river bank. There yet remained, however, 167 feet of clear river space between the two rafts.

While traveling at a speed of between three and four miles an hour, the front left barge struck the corner of the raft and was driven upon it about 100 feet or more, striking and demolishing the tent in its course. When the barge struck the raft, Bowles, the pilot, immediately reversed the engines of the boat and tried to pull the barge off of the raft by backing the boat. He failed in thus freeing the barge, however, and, thinking he might be able to drive the barge over and to one side of the

·raft, into the river and thus free it from the·raft, he
drove the boat forward for that purpose; but again
failed to get the barge free from the raft. By this time
one of the colored deck-hands had gone to the front of
one of the barges, at the direction of Bowles, to ascer-
tain the situation; and when the boat made the forward
movement above described, the      deck-hand called to
Bowles to stop coming forward with the boat, saying he
had already drowned several men and might drown
more. Bowles only succeeded in getting the barge off of
the raft by dividing his tow line, landing the other barges
and breaking the raft.

Westerfield's administrator brought this suit against
the owner and pilot of the boat for negligence in causing
the death of Westerfield, and recovered a verdict against
both of them for $5,000.00. From a judgment upon that
verdict, both defendants prosecute this appeal.

. 1. Complaint is made that the court refused to quash
the sheriff's return upon the summons, or to sustain
appellants' plea to the jurisdiction of the court. John-
son resided in Evansville, Indiana, and was a citizen of
that State, while Bowles, his pilot and captain, resided
in Kentucky. The summons was served upon Johnson
by the sheriff of Ohio county delivering a true copy
thereof to T. K. Bowles, "he being at the time the agent
and manager of the business of said P. H. Johnson, and
the person in charge of P. H. Johnson's business in Ohio
county, Kentucky, where said business is carried on and
where the cause of action occurred." At the same time
a summons was served upon Bowles, individually, while
he was piloting the Samuel on Green river, which was
at that point the dividing line between Muhlenberg and
Ohio counties. The service upon Bowles was unques-
tionably valid, and he makes no serious complaint. The
substituted service upon Johnson was made under sub-
section 6 of section 51, of the Civil Code of Practice,
which reads as follows:

"In actions against an individual residing in another
State, or a partnership, association or joint stock com-
pany, the members of which reside in another State,
engaged in business in this State, the summons may be
served on the manager, or agent of, or person in charge
of such business in this State, in the county where the
business is carried on, or in the county where the cause
of action occurred."

It needs no argument to show that the language of the section just quoted is broad enough to uphold the service upon Johnson, since he was engaged in the business of running the steamboat Samuel in the State of Kentucky, and Bowles was the captain and master of the boat under the employment of Johnson. Bowles had complete and entire charge, not only of Johnson's business in Kentucky, but of the particular business that had caused the injury which was the subject of the action. The court properly overruled the motion to quash the service upon the summons and the plea to the jurisdiction. Guenther v. American Steel Hoop Co., 116 Ky. 508.

2. The petition sets out at length the Pilot Rules adopted by the Board of United States Supervising Inspectors, which regulate the navigation of those rivers whose waters flow into the Gulf of Mexico, and it alleges that those navigating the Samuel had violated those rules in many specific instances which are detailed. The appellants gave a proper bond and asked that the case be removed to the United States Circuit Court for the Western District of Kentucky, upon the theory that it was a case arising under the laws of the United States, and that this fact was shown by the averments of the petition. The circuit court overruled the motion to remove; and, upon appellants having filed the record in the federal court, appellee made a motion in that court to have the case remanded to the State court. The motion to remand was sustained for the reason given in the companion case of Beck v. Johnson et al., which grew out of this same collision. The opinion in that case may be found in 169 Fed. 154. However, upon the trial, appellants contended and now complain that the circuit judge tried the case as if it was governed by the Constitution and laws of Kentucky, and as if the federal statutes and rules adopted in the pursuance of them did not govern the case. We are clearly of opinion that appellants' contention in this respect is wrong, and that the circuit judge's theory and application of the law was right. In distributing the jurisdiction in admiralty and maritime cases the federal judiciary act of 1789 conferred upon the district courts of the United States "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under the laws of import, navigation or trade of the

United States, when the seizures are made on waters which are navigable from the sea by vessels of ten or more tons of burden; * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." The right of action for the negligent or wrongful killing of a person is expressly given by section 241 of the Constitution of Kentucky, and is regulated by section 6 of the Kentucky Statutes. The clause "saving to suitors a common law remedy where the common law is competent to give it" is intended to save the remedy or right of action in those courts which proceed according to the course of the common law as distinguished from admiralty proceedings, and the words "common-law remedy" do not necessarily imply an action or remedy obtainable in a common-law court, but are equivalent to "the means employed to enforce a right or redress an injury," nor are they limited to such causes of action as were known to the common law at the time of the passage of the judiciary act. (1 Cyc., 811.)

This question was before this court as early as 1867, in Stewart v. Harry, 3 Bush, 438—an action for damages caused by the collision of two steamboats on the Ohio River—and the court there said:

"Whether, therefore, the court had jurisdiction in this case or not seems to depend on the nature of the action and the kind of remedy sought by the plaintiff.

"If the proceeding was according to the common law, as modified or improved by statute, and the remedy was such as the law of the State was competent to give, then, in our opinion, the court had jurisdiction, according to the express reservation in the act of Congress.

"In the case of The Moses Taylor (4 Wallace, 427), the supreme court, in commenting on the nature and incidents of a suit in admiralty, as distinguishing it from a common law proceeding, said: 'The distinguishing and characteristic feature of such suit is, that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common law process, whether of mesne attachment or execution, property is reached only through a personal defendant, and then only to the extent of his title.'

"The distinction thus clearly drawn between a suit in admiralty and a proceeding at common law is not different from that which was taken by this court in Broadwell v. Swigert et al. (7 B. Monroe, 39); and if we adopt it, as we think we may, as a judicial test for determining whether this is a suit in admiralty or a common law proceeding, the conclusion that it is not a case in admiralty is inevitable. It is not a proceeding in rem against the steamboat chancellor, but a personal action against the appellant, resulting in a personal judgment against him as a partial compensation for the loss of his boat, established according to a law of the State, just and equitable in its provisions, and applicable to common law proceedings."

That ruling has been consistently followed in Rake v. The Owners of the Steamboat "Potomac," 6 Bush, 25; Digby v. Kenton Iron Co., 8 Bush, 166, and United States Mail Line Co. v. McCracken, 17 Ky. Law Rep. 1111, Schoonmaker v. Gilmore, 102 U. S., 118, is in accord.

3. It is insisted that the demurrer to the petition should have been sustained, because it failed to state that Westerfield himself was free from fault, and that he could not have made that charge under the facts as they subsequently appeared, because of the failure of those upon the raft to display the number of lights required under the rules of the federal government. It is claimed that Hudson v. Scottish Union & National Insurance Co., 110 Ky. 722, sustains the demurrer. The petition, however, expressly charges the appellants with negligence in causing the boat to collide with the raft, "while plaintiff's intestate was exercising ordinary care for his own safety." Moreover, in cases of this character, where one person is killed by the negligent or wrongful act of another, the plaintiff is not required to prove that the deceased was exercising ordinary care for his own safety at the time of his death. Warren's Admr. v. Jennesse, 122 S. W. 865.

4. The appellants' motion for a peremptory instruction was properly overruled. The act of Bowles in attempting to clear the raft by driving the boat forward after he had attempted to back it, was clearly negligence on his part; and it does not appear whether the original collision, or the second forward movement of the boat, caused Westerfield's death.

5. By agreement, the Pilot Rules issued by the Department of Commerce and Labor were read in evidence. Among other regulations imposed upon boats navigating rivers whose waters flow into the Gulf of Mexico, they require a steam vessel under way in fog or thick weather to sound its whistle every minute, and go at moderate speed. Barges are also required to have specified lights in designated places, varying in number and color according to the number of barges in the tow and their location with reference to the boat. The rules also required that a raft of the size of the one upon which Westerfield was killed should carry one white light, from sunset to sunrise, on each outside corner of the raft, making four lights in all, which should be suspended from poles of such height that the light should not be less than eight feet above the water.

In this case the raft carried one light only, and it was hung on the inside of the tent near the top of its center pole. The evidence showed that, up to about two o'clock a. m., the night on which the accident occurred was a clear night under a full moon; that it began to get murky between two and three o'clock in the morning, some two or three hours after the accident; and that at the time of the accident there were small rifts of fog from two to three feet high upon the water. Bowles, the pilot, testifies, however, that this fog was not of sufficient size or density to hide the banks of the river or the natural objects thereon by which a pilot guides his boat, and that he did not consider it a foggy night within the meaning of the rule above quoted regulating the management of boats in foggy weather. The only time he had sounded the whistle in this neighborhood was just before he turned a sharp bend in the river some half a mile below the scene of the accident; and he did this, not on account of the fog, but for the purpose of guarding against a collision which might follow the turning of a sharp bend in the river. There is also some evidence tending to show that neither the boat nor the barges had the requisite number of lights, or that the lights they had were properly placed. In short, it is contended upon either side, and is doubtless true, that the managers of the boat and the managers of the raft both violated the Pilot Rules in one or more particulars. Under this evidence the court instructed the jury as follows:

1. If the jury believe from the evidence that defendant, P. H. Johnson, was the owner of the steam tug boat, Samuel, which was plying on Green River at the time the deceased received his injuries, and the defendant, T. K. Bowles, was the captain, master and pilot employed by said Johnson and in charge of said boat and barges attached thereto on the occasion of the injury complained of to said deceased, Westerfield, and was engaged in doing work in the scope of his employment, and while running said boat and barges in the Green River in the conduct of business of his co-defendant, Johnson, he so negligently ran said boat and barges that same were run against and over a raft of logs on which Frederick Westerfield was situated and then in Green River and killed him, and said Westerfield was at the time of said accident in the exercise of ordinary care for his own safety, then the jury should find for the plaintiff against the defendants, P. H. Johnson and T. K. Bowles, such compensatory damages, if any, as they believed from the evidence was thereby caused to the estate of said Frederick Westerfield and which were the direct and proximate result of said negligence, if any, of said Bowles, not exceeding in all of said damages, the sum of $20,000.00, the amount claimed in the petition.

"2. If the jury should find for the plaintiff any sum in damages under instruction No. 1, the measure of their finding should be such a sum as will reasonably and fairly compensate his estate for the destruction of the defendant, of his power to earn money, and in estimating said damages they may take into consideration his age, condition of health and his ability to earn money and should not find any sum in damages in excess of $20,000.00.

"3. The court instructs the jury further that if they believe from the evidence in this case as supposed in instruction No. 1, then they may, in their discretion, find a joint verdict, against both of the defendants, or they may find a verdict against one of the defendants alone, and find for the other defendant; or they may find a separate verdict in favor of the plaintiff against both of the defendants, giving in their verdict the amount of their finding against each.

"4. If the jury believe from the evidence that the deceased, Frederick Westerfield, by his own negligence or carelessness, contributed to the injuries which he re-

ceived, and to his death, and but for his own contributory negligence, if any, he would not have been injured or killed, then the jury should find for the defendants, and each of them.

"5. Negligence, as used in the instructions, means a failure to use ordinary care; and ordinary care is such care as an ordinarily prudent person would use under similar circumstances where his own interests were involved.

"6. Compensatory damages, as used in the instructions, means such a sum of money as will fairly and reasonably compensate the estate of the decedent for the destruction of his power to earn money which was the direct and approximate result of the negligence, if any, of defendant's master and pilot in charge of said boat, which struck plaintiff's intestate.

"7. Although the jury may believe from the evidence heard in this case, that the deceased, Frederick Westerfield, was negligent, on the occasion when he was killed, yet if the jury shall further believe from the evidence that the defendant, Johnson, saw or could by the exercise of ordinary care, have seen the peril of said Westerfield, if he was in peril, and could have, by the exercise of ordinary care, avoided killing him, after discovering his peril, if any, and failed to do so, then the jury should find for the plaintiff."

The vice of these instructions consists in their failure to prescribe the reciprocal duties of those in charge of the boat and those in charge of the raft, and in leaving to the jury's unguided judgment the decision of the question of negligence. The language used by this court in West Kentucky Coal Co. v. Davis, 138 Ky. 673, appropriately expresses the criticism to be applied to the instructions in this case. In that case the court said:

"It will be observed that the instructions complained of do not present to the jury the reciprocal duties of appellant and appellee. They are so general and abstract in form as to make the jury the judges of both the law and the facts. Smith v. Cornett, 38 S. W., 689, 18 Ky. Law Rep., 818; C., N. O. & T. P. Ry. Co. v. Hill's Admr., 89 S. W., 523, 28 Ky. Law Rep., 530. The jury may have concluded that certain acts constitute negligence, when, as a matter of fact, such was not the case."

And in reply to the contention that the appellant in that case could not complain because he did not offer

better instructions than those given by the court, this court said:

"Nor do we think the failure of appellant to offer more specific instructions than those given deprived it of its right to complain. The rule is that in civil cases the court is only required to give such instructions as are offered by the parties. If, however, an instruction offered is defective in form or substance, the court should prepare, or direct the preparation of a proper instruction on the point attempted to be covered by the instruction offered. L. & N. R. R. Co. v. Harrod, 115 Ky. 877, 75 S. W. 233, 25 Ky. Law Rep. 250; Nicola Bros. v. Hurst, 88 S. W. 1081, 28 Ky. Law Rep. 87.

"But when no instructions are requested by either party, and the court on its own motion undertakes to instruct the jury, the instructions so far as they go should present correctly the law of the case. South Covington & Cincinnati Street Ry. Co. v. Core, 96 S. W. 562, 29 Ky. Rep. 836; Swope v. Schafer, 4 S. W. 300, 9 Ky. Law Rep. 160; Turner, Jr. v. Terrill, 97 S. W. 396; 30 Ky. Law Rep., 89."

In the late case of C. N. O. & T. P. Ry. Co. v. Silvers, 126 S. W. 120, the court instructed the jury that they should find for the plaintiff if the defendant negligently failed to comply with the rules of the company governing the movement of its trains, and that they should find for the defendant if the plaintiff was guilty of such contributory negligence in his failure to comply with the rules of the company that the injury would not have occurred to him but for his negligence. In condemning that instruction, this court said:

"The difficulty with the instructions of the court is that they leave both the law and the facts to the jury. The court should by its instructions determine the law of the case and submit only to the jury the facts. The rules of the defendant were in writing, and what these rules meant was a question of law for the court. It was not a question for the jury whether Silvers was guilty of contributory negligence if he violated the rules. If he violated the rules, and but for this would not have been injured, he can not recover. The court left it for the jury to determine what was the meaning of the rule as to what should be done when the signals displayed for a section are taken down before that section arrives. The rule being in writing, its construction was a matter of law for the court."

C. N. O. & T. P. Ry. Co. v. Hill, 28 Ky. Law Rep. 530, and L. & N. R. R. Co. v. King, 131 Ky., 351, are to the same effect.

We conclude that the circuit judge erred to the prejudice of the appellants in failing to specifically instruct the jury as to the respective duties of the managers of the boat and the managers of the raft.

6. The appellant offered in evidence a certified copy of the rules and regulations issued by the Secretary of War, which prescribed the management of locks and rafts and prescribed other duties of those engaged in river traffic, but the court overruled appellants' motion, and declined to consider those rules. Among them we find the following rule relating to rafts:

"RAFTS.—No raft, moored or moving in any of the pools of Green and Barren Rivers, Kentucky, shall have a greater width than sixty-four (64) feet, nor a greater length than four hundred and fifty (450) feet. Each raft must have sweep oars at each end, be properly manned, and must be kept under such control as not to seriously interfere with other traffic.

"Rafts must not be assembled or moored at such point on the rivers as will seriously interfere with navigation. From sunset to sunrise each day, each raft must display lights as follows: On their center line ten feet above the water, white light on the upstream end, and red light on the downstream end."

It will be noticed that these rules are prescribed by the Secretary of War, while the Pilot Rules above referred to and read in evidence by agreement, are a different set of rules from that issued by the Department of Commerce and Labor for steamboat inspection service. It does not appear that the raft in question had oars, and there was evidence offered which should have been admitted, that it was so moored as to seriously interfere with navigation. Neither did the raft have the lights required by this rule. We think the court erred in refusing to permit these rules, issued by the Secretary of War, to be read in evidence. Like the Pilot Rules issued by the Department of Commerce and Labor, they relate to the navigation of Green River, and in one particular instance to the managing of rafts like the one upon which Westerfield lost his life. If either set of rules was competent evidence, both were competent; and, in our opinion, both were competent. Promulgated under

the authority of the federal government to regulate commerce among the several States, they constitute a part of the law of the river. Their admissibility was, in effect, recognized in United States Mail Line Co. v. McCracken, 17 Ky. Law Rep. 1111, where the court declined to reverse for a failure to admit the rules, upon the ground that, if admitted, they could not have affected the result, under the facts of that case.

For the reasons indicated, the judgment is reversed for further proceedings.

JUDGE SETTLE dissenting.