# International Harvester Company v. Commonwealth.

### (Decided April 10, 1912.)

## Appeal from Breckinridge Circuit Court.

1. Non-resident Corporation—Service of Summons on.—Sub-section 6, of section 51 of the Civil Code of Practice, which regulates the service of summons upon a non-resident, or a partnership, association, or joint stock company, the members of which reside in another State and engage in business in this State, applies to non-resident corporations engaged in business in this State.

2. Summons—Service on Corporations.—The terms "corporation" and "association" are synonymous within the meaning of the

statutory provisions of the Civil Code for the service of process.

3. Summons—Service of—Doing Business.—Where a non-resident corporation places its business in this State in charge of an agent who has no residence or place of business in this State, but who supervises and attends to all the business of the non-resident corporation in this State, the corporation is carrying on business in this State, and the agent has charge of such business within the scope and meaning of sub-section 6 of section 51 of the Code, which authorizes the service of summons upon the agent or person having charge in this State of the business of a non-resident corporation.

4. Agency—Service of Summons.—The question of a person's agency for a non-resident corporation for the service of summons is not to be controlled by the extent of the agent's authority, but by the extent and scope of the business done, and the agent's connection therewith.

5. Agent for Service of Process.—A single sale negotiated by a special agent for that particular instance, renders the selling agent the agent of the non-resident seller for the service of summons in a suit concerning that particular transaction, although he might not be for a different transaction. But where the agent has general charge of the business done in the State, even though his powers be limited, he becomes the manager, or agent, or person in charge of such business in the State for the service of process.

6. Agent for the Service of Process.—It is not necessary that an agent, for the purpose of service of process, should have contractual powers that would enable him to bind his principal. Agency is a representative relation; in its broadest sense it includes every relation in which one person acts for or represents another by his authority.

7. Agent for Service of Process—Interstate Commerce.—A non-resident corporation taking orders for the sale of its goods through agents operating in Kentucky, and collecting money therein for the corporation, is doing business in Kentucky; and summons may be served upon its agent in charge of such business in Kentucky under sub-section 6 of section 51 of the Civil Code of Practice.

8. Criminal Law—Interstate Commerce.—A corporation charged with having entered into a conspiracy in Kentucky in violation of the anti-trust law, cannot evade responsibility by showing that the criminal acts committed in Kentucky were the result of interstate commerce. The punishment does not impose a burden upon interstate commerce; it merely punishes acts done in Kentucky, and subsequent to the act of commerce between the States which brought the property into Kentucky.

HUMPHREY & HUMPHREY, ARTHUR M. RUTLEDGE and L. A. FAUREST for appellant.

JAMES GARNETT, Attorney General, J. R. LAYMAN and CARROLL & CARROLL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At the October Term, 1911, of the Breckinridge Circuit Court, the Grand Jury returned an indictment against the International Harvester Company of America, under section 3915 of the Kentucky Statutes, as amended March 26, 1906, charging it with being a member of a pool, trust or combination with other companies, for the purpose of regulating and controlling the price of harvesting machinery and to enhance the cost thereof above its reasonable value.

Process having issued upon the indictment, it was executed in the manner indicated by the return thereon, which reads as follows:

"Executed the within summons by delivering a true copy of the same to O. L. Pace, chief officer and managing agent of the International Harvester Company of America found in Breckinridge County, Kentucky, its president and vice president, secretary, librarian, cashier, treasurer and clerk, being absent from said county. February 2, 1912.

"DENNIS SHEERAN, S. B. C.
"By A. T. BEARD, D. S."

On February 14, 1912, the appellant entered a special appearance for that purpose only, and moved the court to quash the return upon the process, upon the grounds recited in the motion, that it was a Wisconsin corporation; that it was not carrying on any business in Kentucky at the time the process was served; that O. L. Pace was not its officer or agent of any description; that to proceed upon said service would be in violation of the law of Kentucky, and of the Fourteenth Amendment to the Constitution of the United States, because it did not constitute due process of law; and also that it was in violation of the interstate commerce clause of the Federal Constitution.

Upon the hearing of the motion, appellant read the affidavits of O. L. Pace, J. L. Gardner and William Browning; while the Commonwealth read the affidavits of J. R. Layman and C. M. Schupp, with certain exhibits, and introduced M. D. Beard, who testified orally. The proof upon the part of the Harvester Company shows, in substance, that it was carrying on business in Kentucky in the usual way, until sometime in October, 1911; and, pursuant to section 571 of the Kentucky

Statutes, it had appointed J. L. Gardner as its agent upon whom process could be served; that it had ceased to do business in Kentucky, and had not done business therein since sometime prior to November 1, 1911; that on October 28, 1911, it had revoked the authority of Gardner to receive process for it, by filing a formal revocation in the office of the Secretary of State; that Pace, the person upon whom the process was served, had formerly been employed by the appellant as a "blockman," with authority to transact certain business for the Harvester Company in Kentucky; that prior to November 1, 1911, the Harvester Company had removed all of its property and business office from the State of Kentucky to New Albany, Indiana, and had revoked the authority of all its agents, including Pace; that since that time its only transaction with the people of Kentucky had been the soliciting of proposals for its harvesting machines by means of traveling solicitors, Pace being one of them; that these traveling solicitors had no authority to bind the company in any way, but they merely took orders from proposed customers, and that these orders were of no validity until accepted by the company at a point outside of the State, and when so accepted the goods thus sold were shipped to Kentucky from a point outside of the State, where the title passed to the purchaser. The proof upon the part of the Commonwealth shows that the Harvester Company had moved out of the State in order to avoid the prosecution of indictments and penal actions against it; that some of the particular acts complained of in the indictment and the business so transacted, was done by and through said Pace as agent for said company; that Gardner had endeavored to avoid service of process upon him, which had issued out of the Hardin Circuit Court upon an indictment or penal action there pending; that one Beard had a commission contract with the Harvester Company which expired on September 1, 1911, and that he having left in his hands certain machinery belonging to the Harvester Company, and which he had not sold, Bondurant, an agent of the Harvester Company had a settlement with him for this machinery in November, 1911, under which Beard purchased the machinery and gave his note payable to the order of the Harvester Company, for the purchase price.

The circuit judge overruled appellant's motion to quash the return upon the process, and the appellant

having failed to appear or plead, was fined $500, the lowest penalty prescribed by the statute for the offense charged in the indictment. Subsequently, the Harvester Company moved to set aside this judgment, upon the ground that it was a void judgment; and this motion having been overruled, the Harvester Company appeals to this court for a reversal.

The only question involved, therefore, is whether there was such a service of process upon the Harvester Company that would sustain the judgment rendered.

Under section 147 of the Kentucky Code of Practice in Criminal Cases, the summons in criminal cases must be served in the same manner as a summons in civil cases.

Subsection 3 of section 51 of the Civil Code of Practice provides for the service of process in an action against a private corporation, as follows:

"In an action against a private corporation the summons may be served, in any county, upon the defendant's chief officer, or agent, who may be found in this State; or it may be served in the county wherein the action is brought upon the defendant's chief officer, or agent who may be found therein."

Subsection 6 of said section 51, reads as follows:

"In actions against an individual residing in another State, or a partnership, association, or joint stock company, the members of which reside in another State, engaged in business in this State, the summons may be served on the manager, or agent of, or person in charge of, such business in this State, in the county where the business is carried on, or in the county where the cause of action occurred."

Section 732 of the Civil Code of Practice, providing for the construction of the Code, declares that unless a different intention be expressed, or be shown by the context, the following rule, among others, shall prevail:

"The chief officer or agents of a corporation which has any of the officers or agent herein mentioned is: First, its president; second, its vice president; third, its secretary or librarian; fourth, its cashier or agent; fifth, its clerk; sixth, its managing agent."

It is first contended that the service is insufficient under subsection 6 of section 51, above quoted, because that section does not specifically include corporations within its terms.

Section 208 of the Constitution, however, provides:

"The word corporation, as used in this Constitution, shall embrace joint stock companies and associations."

And, pursuant to this constitutional provision, section 457 of the Kentucky Statutes, regulating the construction of statutes, provides:

"The word 'corporation,' 'company,' may be construed as including any corporation, company, person, persons, partnership, joint stock company or association."

In construing these provisions in Adams Express Company v. Schofield, 111 Ky., 832, it was held that the words "corporation" and "company," should be so construed as to include any corporation, company, person, persons, partnership, joint stock company or association, thus making the terms "corporation" and "association" synonymous within the meaning of these statutory provisions for the service of process.

It seems reasonably clear, therefore, that appellant, although it be a corporation, is equally within the scope and meaning of subsection 6 of section 51 of the Code.

It is not necessary to inquire whether the sheriff's return is in proper form, since it may be amended if the record shows that the proper person was served. Nelson Morris & Co. v. Rehkopf & Sons, 25 Ky. Law Rep., 352, 75 S. W., 203; Cumberland v. Lewis, 32 Ky. Law Rep., 1300.

The real question, therefore, is this: Was Pace an agent, under subsection 3, or under subsection 6 of section 51, above quoted, so that process served upon Pace will sustain a judgment against appellant? Was the Harvester Company engaged in business in the State of Kentucky, and was Pace its agent in charge of such business at the time the summons was served upon him? If these questions are to be answered in the affirmative, the service is admittedly good, and the judgment a valid one.

The Code provision above referred to was passed upon and upheld by this court, under varying states of fact, in Boyd Commission Co. v. Coates, 24 Ky. Law Rep., 730, 69 S. W., 1091; Nelson Morris & Co. v. E. Rehkopf & Sons, 25 Ky. Law Rep., 352, 75 S. W., 203; Guenther v. American Steel Hoop Co., 116 Ky., 580; Wortham v. The Illinois Life Insurance Co., 32 Ky. Law Rep., 827, 107 S. W., 176; Johnson v. Westerfield's Admr., 143 Ky., 10, and in other cases.

A trading corporation is personally present for the

purpose of jurisdiction wherever it has established a place of trade. The difficulty arises in determining what amounts to the establishment of a place of trade.

In Chattanooga N. B. & L. A. v. Denson, 189 U. S., 408, the granting of a loan by a Tennessee Building and Loan Association to a citizen of Alabama upon the latter's signed application, solicited by a traveling agent of the association, and taking a note and mortgage executed in Alabama as security for the loan, constituted a doing of business in Alabama, regardless of the form and terms of the note and mortgage.

The general rule is thus stated in 19 Cyc., 1327:

"The distinction is clearly this: If the foreign corporation confines its operations to the State within which it was created, it can not be sued in a State where it has no office and transacts no business, by serving process on its president or other officer or agent when accidentally present within such State. Such officer or agent does not represent the corporation, or carry with him his official or representative character into a State where the corporation has done no business and has not established any office. But when a foreign corporation sends its officers into another State, and does business there, it is liable to be brought into the courts of such State by a service of process upon such officers, so acting for it, and a judgment founded upon such service will be good everywhere."

Perhaps the best general discussion of this subject is to be found in Mr. Justice Field's opinion in St. Clair v. Cox, 106 U. S., 350. In the course of that opinion Justice Field said:

"It is sufficient to observe that we are of opinion that when service is made within the State upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ, or accompanying its service, or in the pleadings or the finding of the court—that the corporation was engaged in business in the State."

And, in construing the statutes of Michigan, which are, in effect, substantially the same as ours, he said:

"Her statutes expressly provide for suits being brought by them in her courts; and for suits by attachment being brought against them in favor of residents of the State. And in these attachment suits they author-

ize the service of a copy of the writ of attachment, with a copy of the inventory of the property attached, on 'any officer, member, clerk, or agent of such corporation' within the State, and give to a personal service of a copy of the writ and of the inventory on one of these persons the force and effect of personal service of a summons on a defendant in suits commenced by summons.

It thus seems that a writ of foreign attachment in that State is made to serve a double purpose, as a command to the officer to attach property of the corporation, and as a summons to the latter to appear in the suit. We do not, however, understand the laws as authorizing the service of a copy of the writ, as a summons, upon an agent of a foreign corporation, unless the corporation be engaged in business in the State, and the agent be appointed to act there. We so construe the words 'agent of such corporation within this State.' They do not sanction service upon an officer or agent of the corporation who resides in another State, and is only casually in the State, and not charged with any business of the corporation there."

In reviewing this question in the late case of the Good Roads Machinery Co. v. Commonwealth, 146 Ky., 692, we said:

"In Nelson Morris & Co. v. E. Rehkopf & Sons, 75 S. W., 203, 25 Ky. Law. Rep., 352, a broker living in Paducah wired to Nelson Morris & Co., of Chicago, asking their price on hides. The broker was supplied with a quotation, and with this quotation before him sold the hides to Messrs. Rehkopf & Sons at Paducah. He forwarded the order to Nelson Morris & Co., who accepted it and filled it. Suit was brought against Nelson Morris & Co., by Rehkopf & Sons, the summons issuing upon the petition being served upon the broker, Bransford Clark, under subsection 6, of section 51, of the Civil Code. The service was upheld by this court; but the opinion was specific in remarking that Bransford Clark was the agent 'as to this transaction,' and further pointed out that the action arose 'out of this transaction.'

"In Wortham, et al. v. Illinois Life Insurance Co. 107 S. W., 176, 32 Ky. Law Rep., 827, Mr. Leslie M. Rue, an insurance man of Harrodsburg, in conjunction with an insurance man from Louisville, insured the life of Mrs. Wortham in a company not regularly represented by either of them. Mr. Rue had a commission upon this

business. He collected the first three premiums due on the policy. Mrs. Wortham did not pay the fourth premium and died shortly after its due date. Action was brought upon the policy by the beneficiaries named in it. Their claim was that the policy was in force, notwithstanding the failure to pay the premium, because of her alternative right to extended insurance, provided for in the policy, as she had given notice to the company, through Mr. Rue, of her desire to use her accumulations for that particular purpose. This court held that the testimony above outlined about this transaction was sufficient to take the case to the jury upon the question of Rue's agency, as to this matter.

"In Boyd Commission Co. v. Coates, 69 S. W., 1091, one R. L. Carter was the Clinton, Kentucky correspondent of the Boyd Commission Co., a brokerage concern of St. Louis. The Commission Company had a private wire into Carter's office, for which he paid them rental. He would transmit over this wire orders obtained by him for the purchase of stocks of various kinds, for which he charged one-fourth of one per cent. commission on all deals made with his customers. The company bought these stocks on the market and divided the commission with Carter. The Commission Company paid all losses incurred on these deals and appropriated all the profits except the commission paid to Carter. In an action arising out of one of these particular transactions service was had upon Carter, under subsection 6, of section 51, Civil Code. The court held that Carter was the agent, and sustained the service. It will be noted that Carter was acting regularly from day to day with a private wire between his own office and that of his principal.

"In Johnson v. Wuesterfield's Admr., 143 Ky., 10, the service was had upon an Indiana owner of a steamboat doing business in Kentucky, by service upon the captain and master of the boat in Kentucky. This court upheld the service, saying that the captain 'had entire and complete charge, not only of Johnson's business in Kentucky, but of the particular business that had caused the injury which was the subject of the action.' "

This is not the case of a single business transaction performed within the State by some agent other than Pace, but it is a case where all or the principal part of the business that appellant does in the State is managed by and in charge of Pace.

The question is not to be controlled by the extent of the agent's authority, but by the extent and scope of the business done and the agent's connection therewith. As was pertinently said in Good Roads Machinery Co. v. Commonwealth, 146 Ky., 695:

"It is not the presence or absence of a specific contract of agency or a specific execution of a commission of agency, but the acts and facts proven in each particular case, which determine the existence or non-existence of the agency."

A single sale negotiated by a special agent for that particular instance, renders the selling agent the agent of the non-resident seller for the service of summons in a suit concerning that particular transaction, although he might not be for a different transaction. Nelson Morris & Co. v. Rehkopf & Sons, 25 Ky. Law Rep., 352, 75 S. W., 203.

But where the agent has general charge of the business done in the State, even though his powers be limited, he becomes "the manager, or agent, or person in charge of such business in this State" for the service of process. The Code provision does not confine the service of process to the agent; it includes the manager and the person in charge of the business in this State.

But if the service of the summons should be confined to the defendant's agent, the service in the case at bar would nevertheless be sufficient, since Pace was appellant's agent having charge of its business in this State. It must be conceded that appellant was doing business of a certain kind, in Kentucky.

Appellant's contention, as we understand it, is that an agent for the purposes of service of process, must have such contractual powers that enable him to bind his principal; and that since Pace could, under his authority, solicit orders only, which became binding upon their acceptance by the principal, he was not an agent for the service of process.

This, however, is too narrow a view of the law of the case. "Agency is a representative relation; in its broadest sense it includes every relation in which one person acts for or represents another by his authority." 31 Cyc., 1189. It is upon this principle that service of process against the agent is upheld in criminal prosecutions and in cases of tort. Commonwealth v. Bullock, 22 Ky. Law Rep., 528; Carpenter v. Laswell, 23 Ky. Law Rep., 686.

Turning to the proof in this case, we find that prior to January, 1912, the appellant was doing a general business through its agent in the State of Kentucky, with a properly designated agent therein upon whom process could be served. Its general office was then in Louisville. After the removal of its office from Louisville to New Albany, Indiana, the method of conducting its business is perhaps best shown by the general instructions sent to all the company's general agents on November 7th, 1911, which read as follows:

"The company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis. Travelers negotiating sales must not hereafter have any headquarters or place of business in that State, but may reside there. Their authority must be limited to taking orders, and all orders must be taken subject to the approval of the general agent outside of the State, and all goods must be shipped from outside of the State after the orders have been approved. Travelers do not have authority to make a contract of any kind in the State of Kentucky. They merely take orders to be submitted to the general agent. If any one in Kentucky owes the company a debt, they may receive the money, or a check, or a draft for the same, but they do not have any authority to make any allowance or compromise any disputed claims. When a matter can not be settled by payment of the amount due, the matter must be submitted to the general collection agent, as the case may be, for adjustment, and he can give the order as to what allowance or what compromise may be accepted. All contracts of sale must be made f. o. b. from some point outside of Kentucky and the goods become the property of the purchaser when they are delivered to the carrier outside of the State. Notes for the purchase price may be taken and they may be made payable at any bank in Kentucky. All contracts of any and every kind made with the people of Kentucky must be made outside of that State, and they will be contracts governed by the laws of the various States in which we have general agencies handling interstate business with the people of Kentucky. For example, contracts made by the general agent at Parkersburg, W. Va., will be West Virginia contracts.

If any one of the company's general agents deviates from what is stated in this letter, the result will be just the same as if all of them had done so. Anything that

is done that places the company in the position where it can be held as having done business in Kentucky, will not only make the man transacting the business liable to a fine of from one hundred to one thousand dollars for each offense, but it will make the company liable for doing business in the State without complying with the requirements of the laws of the State. We will, therefore, depend upon you to see that these instructions are strictly carried out."

The agents were thereby authorized to take orders for goods in Kentucky, and in case a customer in Kentucky owed the company, the agents were authorized to receive money, checks, or drafts in payment thereof. Notes for the purchase price of machinery sold in Kentucky are taken by the agent, and made payable at any bank in Kentucky. At the time the summons was served upon Pace, he was a solicitor taking proposals for the purchase of appellant's goods, in substantially the same general way that the business was formerly conducted in the State, with the exception, it is claimed, that the proposals must now be accepted by the general manager at New Albany, Indiana, and not at Louisville, Ky. But evidently this is a mere change in form rather than of substance, since the authority now conceded to its traveling men was, in law, the same, and no more, than they had under the law previous to appellant's crossing from the south bank to the north bank of the Ohio river. Charles Brown Grocery Co. v. Becket, 22 Ky. L. R., 393, 57 S. W., 458; John Matthews Apparatus Co. v. Renz, 22 Ky. L. R., 1530; Seven Hills, etc., v. Chase, 26 Ky. L. R., 336; Becker Co. v. Alvey, 27 Ky. L. R., 836.

But if we should look to the decisions of other jurisdictions in determining the question whether appellant was doing business in Kentucky, within the meaning of our statute, it would seem that the case of the International Text-Book Co. v. Pigg, 217 U. S., 91, is conclusively against appellant's contention that it is not so engaged in business.

In the Pigg case, the Text-Book Company conducted a correspondence school at Scranton, Pa., and had a salaried solicitor-collector at Topeka, Kansas, who solicited applications for scholarships and collected and remitted the fees therefor. The company had no office in Kansas, and its teachings was conducted wholly by correspondence with the home office at Scranton. It will thus be seen that the relation of the Text-Book Co. to its Kansas

solicitor-collector, was, in its legal effect, substantially the same as the relation of appellant to its solicitor-collector Pace in Kentucky. If, however, it should be said that there is a difference in the fact that Pace had no right to make contracts for appellant, while the Text-Book Company's solicitor-collector had that right, the criticism is sufficiently answered by the opinion in the Pigg case, which ignored that distinction, and held that the continued and permanent value of the business and the like representation of the company by its solicitor-collector as distinguished from a mere casual act or representation determined the question of business and agency. The question arose in a suit by the Text-Book Co. against one of its students to recover a subscription fee, and the defense was that the company was doing business in Kansas and had failed to comply with the laws of that State, which required a foreign corporation to file with the State Charter Board, its charter, with an extended statement of the condition and affairs of the corporation, accompanied by a fee, as a condition precedent to its right to do business in Kansas. The Supreme Court of the United States held that the Text-Book Company was doing business in Kansas.

We conclude from the evidence before us, that the appellant was doing business in the State of Kentucky at the time the process was served upon Pace, and that Pace was appellant's agent in charge of said business, within the meaning of the Code provisions above quoted.

2. It is insisted, however, that the business of appellant in Kentucky is interstate commerce, and that the carrying on of interstate commerce by appellant with persons residing in Kentucky does not constitute "doing business in Kentucky." This is a novel proposition; and, strictly considered, it would seem to be a matter of defense upon the merits, rather than a ground for quashing the return upon the summons, since the indictment charges no act that can be construed into an interstate business transaction. This contention would make the service of process a part of interstate commerce, and not a separate question dependent upon the doing of business in the State, or the agency of Pace.

In support of this proposition appellant relies upon Commonwealth v. Hogan Co., 25 Ky. L. R., 41, 74 S. W., 738, and Commonwealth v. Eclipse Hay Press Co., 31 Ky. L. R., 824. Those cases, however, were prosecutions under Section 571 of the Kentucky Statutes, to recover

penalties from foreign corporations for failing to file, in the office of the Secretary of State, a statement giving the name of a resident agent upon whom process might be served. Those cases merely decided that the State could not impose that burden upon interstate commerce; not that interstate commerce did not constitute doing business in the State. No such question was raised or decided.

It is well settled that a State cannot impose any condition upon interstate business that materially or directly burdens that business; and it has been held, in a uniform line of decisions by this court, that imposing a license upon such business, or requiring the filing of a statement with the Secretary of State as a condition to the transaction of interstate business, was such a burden. Commonwealth v. Hogan, 25 Ky. L. R., 41, 74 S. W., 737; Commonwealth v. Eclipse Hay Press Co., 31 Ky. L. R., 824; Three States Buggy Co. v. Commonwealth, 32 Ky. L. R., 385, 105 S. W., 971; Milburn Wagon Co. v. Commonwealth, 139 Ky., 330.

The cases of Crutcher v. Kentucky, 141 U. S., 47; International Text-Book Co. v. Pigg, 217 U. S., 91; Commonwealth v. Read Phosphate Co., 113 Ky., 32; Commonwealth v. Parlin, 118 Ky., 168; Milburn Wagon Co. v. Commonwealth, 139 Ky., 330; Brennan v. Titusville, 153 U. S., 289; and Caldwell v. North Carolina, 187 U. S., 621, some of which are relied upon by appellant, likewise involved the right of a municipality to impose and collect a tax upon interstate commerce, and come within the general rule above announced. But the service of a summons upon an agent imposes no burden upon appellant's business; it is not required to pay a tax, obtain a license, or file a statement with a State officer as a condition to its right to do interstate business in Kentucky.

In International Text-Book Co. v. Pigg, supra, the court said:

"It is true that the statute does not, in terms, require the corporation of another State engaged in interstate commerce to take out what is technically 'a license' to transact its business in Kansas. But it denies all authority to do business in Kansas unless the corporation makes, delivers and files a 'statement' of the kind mentioned in Section 1283. The effect of such requirement is practically the same as if a formal license was required as a condition precedent to the right to do such business. In either case it imposes a condition upon a corporation of

another State seeking to do business in Kansas, which, in the case of interstate business, is a regulation of interstate commerce and directly burdens such commerce. The State cannot thus burden interstate commerce. It follows that the particular clause of Section 1283 requiring that 'statement' is illegal and void.

"In this connection it may be observed that by the statute the doors of Kansas courts are closed against the Text-Book Company, unless it first obtains from the Secretary of State a certificate showing that the 'statement' mentioned in Section 1283 has been properly made. In other words, although the Text-Book Company may have a valid contract with a citizen of Kansas, one directly arising out of and connected with its interstate business, the statute denies its right to invoke the authority of a Kansas court to enforce its provisions unless it does what we hold it was not, under the Constitution, bound to do; namely, make, deliver and file with the Secretary of State the statement required by Section 1283. * * *

"It is sufficient to say that the requirement of the statement mentioned in Section 1283 of the statute imposes a direct burden on the plaintiff's right to engage in interstate business, and therefore is in violation of its constitutional rights. It is the established doctrine of this court that a State may not, in any form or under any guise, directly burden the prosecution of interstate business. But such a burden is imposed when the corporation of another State, lawfully engaged in interstate commerce, is required, as a condition of its right to prosecute its business in Kansas, to make and file a statement setting forth certain facts which the State, confessedly, could not control by legislation."

In that case the Text-Book Company was required to conform to an unauthorized requirement, before it could collect its debt by judicial proceedings, and for that reason alone the judgment of the Kansas court was reversed. The same is true of the Texas cases—Albertype Co. v. Gus Feist Co., 114 S. W., 791; Eclipse P. & M. Co v. New Process R. & S. Co., 120 S. W., 533; and Moroney H. Co. v. Goodwin Pottery Co., 120 S. W., 1091 —relied upon by appellant. No such state of fact exists in the case at bar. On the contrary, appellant has been indicted in Kentucky for doing an unlawful act in Kentucky; and the offense charged is not directly or necessarily connected with interstate commerce. Appellant

seeks to avoid the effect of its alleged unlawful act committed in Kentucky by showing, that aside from the unlawful act charged, it has so arranged its business as to give it the character of interstate business. But it is not charged that the unlawful act is a part of its interstate business, and clearly it cannot be, from its very nature.

If the criminal laws of a State could be successfully evaded by connecting the illegal act, at some point in its development, with some other act so as to give the illegal act the color of an interstate act of business, it would then become an easy matter to avoid responsibility in many cases of this character.

The absence of merit in appellant's contention, even as a defense, will be seen from the language of the court in Standard Oil Co. of Kentucky v. Tennessee, 217 U. S., 413. In that case the Oil Company, a Kentucky corporation, was ousted from Tennessee for a violation of the Tennessee anti-trust act. Claiming that the judgment of ouster was contrary to the 14th amendment to the Federal Constitution, and also that it was an unconstitutional interference with commerce among the States—the same defenses that are here relied upon—the Oil Company appealed the case to the Supreme Court of the United States; but in affirming the judgment of the Tennessee court, the Supreme Court of the United States said:

"The second objection to the statute is that, although construed by the court to apply to domestic business only, nevertheless it is held to warrant turning the defendant out of the State for an interference with interstate trade. The transaction complained of was inducing merchants in Gallatin to revoke orders on a rival company for oil to be shipped from Pennsylvania, by an agreement to give them 300 gallons of oil. It is said that as the only illegal purpose that can be attributed to this agreement is that of protecting the defendants' oil against interstate competition, it could not be made the subject of punishment by the State; that the offense, if any, is against interstate commerce alone.

"The cases that have gone as far as any in favor of this proposition are those that hold invalid taxes upon sale by traveling salesmen, so far as they affect commerce among the States. Robbins v. Taxing Dist., 120 U. S., 489; Rearick v. Pennsylvania, 203 U. S., 507. These cases fall short of the conclusion to which they are supposed to point. Regulations of the kind that they

deal with concern the commerce itself, the conduct of the men engaged in it, and as so engaged. The present statute deals with the conduct of third persons, strangers to the business. It does not regulate the business at all. It is not even directed against interference with that business specifically, but against acts of a certain kind that the State disapproves in whatever connection. The mere fact that it may happen to remove an interference with commerce among the States as well with the rest does not invalidate it. It hardly would be an answer to an indictment for forgery that the instrument forged was a foreign bill of lading, or for assault and battery, that the person assaulted was engaged in peddling goods from another State. How far Congress could deal with such cases we need not consider, but certainly there is nothing in the present state of the law, at least, that excludes the States from a familiar exercise of their power. See Field v. Barber Asphalt Paving Co., 194 U. S., 618, 623.''

In our view, this case presents only the questions of appellant's doing business in the State, and Pace's agency. Appellant's business transactions constituting interstate commerce, may or may not affect the trial; they do not affect the validity of the summons. The indictment does not deal with them, and its scope is not to be enlarged or diminished by affidavits filed upon a motion to quash the return upon the summons. Furthermore, upon the trial the Commonwealth may confine its proof to intra-state matters. We cannot anticipate that it will depart from the terms of the indictment. The unsoundness of appellant's contention in this respect becomes apparent when its effect is considered, in case it should be upheld and applied in practice. If the summons is to be quashed and the prosecution thereby ended, we have the anomalous situation of the violation of a substantive criminal law tried and finally disposed of in a question of procedure, upon ex-parte evidence; and the question of appellant's guilt can never be tried because it proposes to do nothing but interstate business. Surely it was never intended that the wise constitutional provision for the protection of bona fide commerce among the States, should or could thus be indirectly used as a shield to protect the offender from punishment for an illegal act not directly connected with interstate commerce. It is difficult to comprehend how a conspiracy may be viewed as an act of interstate commerce; and if

the crime charged is not such an act, the offender is not to escape trial by showing that its agent upon whom the summons was served, was, pursuant to the conspiracy and entirely within the State, engaged collaterally in interstate commerce. Appellant is charged with having conspired, in Kentucky, with other like companies to do certain unlawful acts; not with selling to them or to others, by sales which may have constituted interstate commerce. In our opinion the summons was properly served, and constitutes a valid process against the appellant.

Judgment affirmed.